## The City of St. Paul,

*v.*

## Charles Colter.

The ordinance passed by the Common Council of the City of St. Paul, entitled " An ordinance regulating and licensing butcher's shops, butcher's stalls, and venders of fresh or butcher's meat," approved May 4th, 1865, fixing the price of a license at $200, and first published on the 9th day of September, 1865, held to be valid.

This was a prosecution commenced before the city justice of the city of Saint Paul, for the violation of an ordinance in relation to butchers, passed May 4th, 1865, and published Sept. 9th, 1865, the material portions of which are as follows : "No person shall keep a butcher's stall, or vend fresh or butcher's meat, in less quantities than the quarter, within the limits of the city of Saint Paul, without first having obtained a license for that purpose as hereinafter provided.  *  *  * Any person upon paying to the city treasurer the sum of two hundred dollars shall be entitled to, and on demand shall receive, a license issued by the city clerk, and signed by the mayor, to keep a butcher's shop, house or stall  *  *  *  for the period of one year, &c.

"Any person violating any provision of this ordinance shall upon conviction thereof, be punished by a fine not exceeding one hundred dollars, nor less than twenty dollars," &c., &c. The defendant was found guilty and an appeal taken by him to the District Court of Ramsey County.  In the District Court the defendant waived trial by jury, and the cause was

tried before the Court. The plaintiff offered in evidence the said ordinance, to which evidence the defendant objected upon the following among other grounds: "That the alleged ordinance is unreasonable, excludes defendant from the right to sell at the public market, or elsewhere, in said city, without paying an onerous tax under color of a license; that said ordinance is in restraint of trade, and not in regulation of trade, and is not authorized by law, and manifestly in violation of defendant's individual rights; that said ordinance must be shown to be reasonable as an indispensable prerequisite to its introduction in evidence, and the presumption of unreasonableness appearing upon its face removed by testimony." These objections were severally overruled by the Court, and the ordinance admitted in evidence, and the defendant excepted. The plaintiff then put in evidence the city charter and amendments thereto, and after showing by the testimony of several witnesses, the acts done in violation of the ordinance, rested.

The defendant then offered to prove, among others, the following facts: "That defendant is regularly engaged in the business of buying and selling fresh and butcher's meat within said city, at wholesale and retail, and was so engaged at the time charged in the complaint, and has been so engaged for the last two years; *  *  * that he is the owner of the shop, building and premises in which said business is carried on; that said building is built of brick, and was designed and built for his said business, at an expense of $10,000, without any expense to the city; *  *  * that the sum of $200 *  *  *  * is not required or necessary to regulate his said business, but said sum is required *solely* for the purpose of raising a revenue; that by said ordinance he is required to pay much more than his share towards the support of the city government, in order to carry on his said business; that the payment

of said $200 for license, and the restriction placed upon his said business, by said city, is unreasonable and unnecessary, and the price of meat enhanced thereby and the sale restrained;   *   *   *   that it is wholly unnecessary to regulate the butcher's business, and oppressive to the butchers;" which testimony so offered was rejected by the Court under objection, and the defendant excepted. The Court found the defendant guilty; whereupon the defendant filed his exceptions, and entered into recognizance pursuant to statute, and removed the cause to this Court.

SMITH & GILMAN and S. M. FLINT, for Appellant.

I.   The ordinance under which the prosecution is instituted, is unauthorized and void, and oppressive and in restraint of trade.

II.   Municipal corporations can only regulate trades or employments that are liable in and of themselves to become nuisances, or injurious to the public, if not properly supervised or carried on; such corporations cannot prohibit the conduct of a lawful business; their powers, legislative and otherwise, are confined to sanitary and police regulations. *City of St. Paul vs. Laidler*, 2 *Minn.* 190; 5 *Cowen*, 462.

III.   The legislature of the State cannot authorize a corporation to pass by-laws, save only such as are reasonable, and in regulation of employments that may become offensive. Legislation, other than mere by-laws punishing nuisances when they exist, or disturbances of the public quiet, cannot be delegated. *Sedgwick on Const. Const., page* 149.

IV.   The ordinance excludes every person from the conduct of the butchering business, or as a vender of fresh meats, unless he shall have the ability to pay $200 tax, under color of a license; and as there is no exception in favor of

persons resorting to the public market, or authority given to carry on said business there, it is virtually a discrimination against the class (to wit, those unable to pay $200) and in favor of another.

V. The act of 1865, under which said ordinance is claimed to be authorized, does not fix the sum of from $5 to $500, as a reasonable charge for license for a vender of fresh meats; said section embraces shows, theatres and many other matters that it is manifest would be reasonably charged by the *year* at a higher rate than the vender of an article so necessary for the support of human life.

VI. It was incumbent on said corporation to show that said ordinance is reasonable.

VII. It was error to reject the evidence on the part of the defendant, as to the amount reasonably necessary to regulate said business.

VIII. The defendant having erected at great expense, and with the knowledge of the corporation, a brick building constructed for the purpose, and suitable only for said business, before the passage of said ordinance, said corporation could not afterwards, under color of a license, render said building useless, and in that way virtually confiscate it.

IX. These corporations are created only for the purpose of protecting persons, property and business from injury and annoyance, and not to persecute, annoy or prevent the proper prosecution of the business they are created to protect.

X. The Act of 1865 is in violation of Section 27 of Art. IV of the Constitution.

XI. The ordinance under consideration is manifestly for revenue, and the Court erred in refusing to permit the defendant to show the amount necessary to regulate the business in which he was engaged.

I. V. D. HEARD for Respondent.

I.   The ordinance in question is strictly within the authority conferred upon the Common Council of the city by its amended charter, approved March 2, 1865.   In that amendment the amount of license. allowed to be required from butchers is $500, and the ordinance only exacts $200.   To allow the reasonableness of this sum to be questioned by evidence, is to establish a principle which would overthrow all laws, and would constitute Courts, not tribunals to construe and enforce laws, but would give them a veto upon laws, and constitute them a necessary part of the law making power itself.   The appellant does not claim but what some license may be required from him, but bases his objection to the ordinance simply upon the reasonableness of the amount.   The legislature and the common council are the tribunals to decide that question, and their decision should be regarded as conclusive, unless it manifestly appears to the Court, not from evidence, but from the face of the ordinance, that the sum is so grossly exorbitant as to indicate they were actuated by corrupt motives or prejudices.   The case of *Laidler vs. the City of St. Paul* is not in point, as the ordinance in question in that case was decided to, in effect, prohibit the trade.

II.   The amendment to the city charter above referred to is not void, as containing more than one subject, as it does not in fact.   The county treasurer is made by law the collector of city taxes, and is *pro hac vice* a city officer.

III.   The ordinance is not invalid because it was not reported by a committee of the common council.   The rule in reference to this is simply one to regulate the business of the common council, prescribed by the council, and of the violation whereof no one can complain.   If it had been any requisition of the charter, it might have been different.

The ordinance was duly proven and published. *See Sec. 4, Ch. 4, p.* 31 *City Charter, and General Statutes as to affidavits of publication.*

IV. The expenses of regulating a trade are not confined to the wages of policemen, but enter into all the expenses of regulating a city government, such as the salaries of council men, city clerk, and inspector of public meats.

*By the Court.*—BERRY, J. Unquestionably the legislature of this State would possess authority under a general power of legislation, as that function is commonly understood and exercised, to establish municipal corporations. Besides, our Constitution places this matter beyond doubt when it says in *Sec.* 2 *of Art X:* "No corporation shall be formed under special acts *except for municipal purposes.*" See *Tierney vs. Dodge,* 10 *Minn.* 171. And the object in chartering these municipal bodies, is to confer special privileges and police powers designed to meet the necessities of the case; among these is the privilege of enacting by-laws and ordinances, by which the good order, the health and general well being of the municipality may be secured. Undoubtedly, this is a species of delegated legislation; but there can be no valid objection to it on that score, for the authority to establish these municipal corporations, in its commonly received acceptation, implies the power to establish with the privileges which are ordinarily a part of the chartered rights of such bodies politic. The regulation and licensing of butcher shops are some of the privileges allowed to incorporated cities. *Sedgwick on Stat. and Cons. Law,* 463–6. We think there can be no doubt of the power of the legislature to enact *Sec.* 5, *Ch.* 16 *of the Special Laws of* 1865, *page* 123, whereby authority is granted to the Common Council of the City of St. Paul, "by ordinance, resolution or by-laws, to license and regulate * * *

butchers' shops and butchers' stalls, and venders of butchers' meat * * provided that they be not repugnant to the Constitution and laws of the United States, or of this State." Section 5 above cited further provides, "that not less than five dollars, nor more than five hundred dollars, shall be required to be paid for any license under this act," and with some apparent repetition adds, that "said Common Council may, at any time, revoke any license granted under this act for mal-conduct in the course of trade, *and may regulate and restrain the sale of fresh or butcher's meat,*" &c.

It will be at once seen that quite extensive powers are thus bestowed upon the City Council, for the purpose doubtless of establishing an efficient municipal government: and these powers do not depend, as in many of the English cases in which questions have arisen somewhat analogous to those raised in this action, upon *customs,* the existence of which was in dispute, but they are conferred by express legislation. It is not contended, nor could it be with reason, that the city council might not with propriety be authorized to fix upon *some* amount as the price of a license in a case of this kind, but it is urged that the ordinance by which such price is fixed at *two hundred dollars* is, on account of the exorbitance of that sum, " unauthorized, void, oppressive, and in restraint of trade ; " that " municipal corporations can only regulate trades or employments that are liable in and of themselves to become nuisances, or injurious to the public if not properly supervised or carried on; " that " such corporation cannot prohibit the conduct of a lawful business;" that "these powers, legislative and otherwise, are confined to sanitary and police regulations;" that "the legislature of the State cannot authorize a corporation to pass laws, save only such as are reasonable, and in regulation of employments that may become offensive;" that "legislation other than mere by-laws punishing nuisances

when they exist, or disturbances of the public quiet, cannot be delegated." So far as the exorbitance of the price of the license is concerned, we have seen that the common council is empowered by the statute to fix it at five or five hundred dollars, or at any point between. This power is given as much with regard to licenses of butchers' shops, as with regard to any other species of license. What limits should be imposed upon the licensing power, was a matter for the legislature to determine,—a matter dependent upon the judgment and discretion of the legislature. In such case we do not think it proper to question the exercise of legislative discretion. It is possible there may be instances where this discretion is so grossly and manifestly abused, that the courts may be called upon to pronounce its exercise an usurpation, but it will be time enough to dispose of the questions which might arise under such circumstances, when they are presented for adjudication.

Under any reasonable system of government, much must be left to human discretion exercised upon the facts and necessities of the case in hand. We think that it was competent for the legislature to authorize the common council to fix the price of licenses at a sum from five to five hundred dollars. We think it was competent for the legislature, within proper limits, to leave the sum which should be required, in the discretion of the common council, for the very object of a charter is to empower them to provide for the well being of the city, by such regulations and ordinances as their daily observation of what is going on around them will qualify them to enact more judiciously than a body constituted as a State legislature ordinarily is, could be expected to do. We are unable to see any abuse of discretion in the passage of the ordinance in question. It occurs to us that if there is any kind of business transacted in a city "which is liable, in and of itself to become a nuisance, or injurious to the public if not properly supervised

or carried on," or which "may become offensive," or which is a legitimate subject of "sanitary regulations," it is pre-eminently this very business of vending fresh and butcher's meats. The requirement of any license, or the enforcement of any regulation upon business, is to some extent, necessarily "in restraint of trade;" but it does not therefore follow that such requirement or regulation is "unauthorized, void or oppressive." It is in this case *authorized* by the legislature, and not being forbidden by the constitution, it is therefore not void, but has the force of law; and if it be oppressive, the remedy, as in many other cases, lies with the legislature or common council. *Presb. Ch. vs. City N. Y.*, 5 *Cowen*, 540; 7 *Ib.*, 604; *McDermott vs. Board of Police*, 5 *Ab. Pr. Rep.*, 434. *Prima facie*, the presumption would be that the ordinance in question in this case is valid, as being within the scope of the powers of the common council; and this presumption is not overcome in our mind, by any thing going to show that the imposition of the license is a cover for unequal taxation, or for a burden or restraint upon freedom of trade not warranted by the terms of the charter, or the legitimate purposes for which such charters may be granted. Nor is it manifest to us that the common council have transcended, or gone outside of the police power which may be properly conferred upon them.

We think the testimony offered for the purpose of showing "the amount of license reasonably necessary to regulate the business" in which the appellant was engaged, was properly rejected. What part of the expenses of maintaining a police force, or otherwise sustaining a city government should be paid by butcher's licenses, could not furnish data from which to determine the reasonableness of the price of the license. We think it was entirely legitimate for the council in fixing the sum which should be required for a license, to look at

numerous considerations; perhaps, among others, at the probability that the city might be put to great expense in litigation, and to other expenses arising out of this business, as well as at the expediency of fixing such price as to prevent any person from embarking in this business who could not furnish such evidence of his responsibility as the payment of $200 for a license, and as a stake for his good behavior, a stake which he was liable to forfeit, if, in the language of section 5, above quoted, his license should be revoked "for mal-conduct in the course of trade." Nor is it all important whether these licenses produce a revenue to the city or not. If it was proper to impose licenses, the money realized must go somewhere, and we can think of no more appropriate place than the city treasury. There cannot, possibly, be anything in the point made that the ordinance confiscates the property of the appellant by rendering the building which he has erected for a meat shop useless, unless he submits to the payment of $200, and takes out a license.

It is insisted that *Ch.* 16, *Sp. Laws*, 1865, *page* 121, is void, because it violates section 27, Art. IV of our constitution, by which it is declared that "no law shall embrace more than one subject, which shall be expressed in its title." It is claimed that *Sec.* 7 *of Chap.* 16, by which it is provided in substance, that the collector of taxes for Ramsey County shall pay over his collections on account of the city to the city treasurer on the first Monday of each month, relates to a different subject from the balance of the chapter, which is devoted to amendments to certain specified sections of the city charter. The title of the chapter is "an act to amend the charter of the city of St. Paul."

We think Section 7 may with propriety be regarded as an amendment to such charter, and that the law does not embrace more than one subject on account of the insertion of sec-

tion 7, any more than it does on account of the insertion of the preceding sections, which relate to different matters of detail, but to the same general subject, to wit: the government and management of the affairs of the city of Saint Paul. As observed by the counsel for the appellant, the collector of Ramsey county is collector of city taxes, and *pro hac vice* a city officer. See *Board of Supervisors vs. Heenan*, 2 *Minn.*, 330. *Tuttle vs. Strout*, 7 *Minn.*, 468.

The point made as to the irregularity of the passage of the ordinance, was understood upon the argument to be abandoned; at any rate, we see nothing in it, nor in the further objection that the ordinance was passed on the 4th of May, and not published till the 9th of September, between which dates several meetings of the Council had taken place. *Sec.* 23, *Ch.* 10, of the Charter, enacts that "The Common Council shall cause all publications made by authority of the city to be inserted in the first column of the third page of the newspaper doing the city printing." This is admitted to have been done in this case and the Statute does not fix any particular time within which it must be done.

It is unnecessary to extend this opinion further than to say, that as we perceive no error, the judgment below must be affirmed.