<hr />

## STATE OF MINNESOTA *vs.* EDWARD CASSIDY.

### December 9, 1875.

**Constitution—Police and Taxing Powers—Subject of Act Embraced in Title.—** Laws 1873, ch. 10, entitled "An act to establish a fund for the foundation and maintenance of an asylum for inebriates," sustained as a legitimate exercise of the police power of the state, not prohibited by § 1, art. 9, nor repugnant, as respects its title, to § 27, art. 4, of the constitution.

This and the next following case were prosecutions for selling liquor without the license required by Laws 1873, ch. 10, the title and material sections of which are stated at length in the following opinion. In this case the defendant was convicted before a justice of the peace in Olmsted county, and appealed to the district court for that county, where the judgment of the justice was, by order of *Mitchell*, J., affirmed, and the defendant appealed to this court.

*R. A. Jones*, for appellant.

The act is unconstitutional because its subject is not expressed in its title. It is an act " to establish a fund " for a particular purpose. It is, therefore, not an act to regulate the sale of intoxicating liquors, and cannot be held to be an exercise of the police power.

The act, not being an exercise of the police power, must be an attempted exercise of the power of taxation. Laws regulating the sale of liquor, by licensing the same, have uniformly been upheld by construing them as police regulations, and not taxation; but the title of this act and the constitutional provision will not permit such construction here.

Being then an act imposing a tax, it violates Const., art. 9, § 1, requiring equality of taxation. The act proposes to raise a fund for a particular purpose by imposing a tax, not upon property, but upon certain persons engaged in a particular business. It cannot be said that such a tax is " as nearly equal as may be." In one sense it is equal as regards all within its provisions, for they each pay the same sum; but the equality of burden secured by the constitution is as much disturbed by a law imposing a tax for a state purpose upon a certain class as upon a particular locality. *Stinson* v. *Smith*, 8 Minn. 366; *Sanborn* v. *Comm'rs of Rice Co.*, 9 Minn. 273; *Dorgan* v. *City of Boston*, 12 Allen, 223, 237.

*Chas. C. Willson* and *Chas. M. Start*, for the State.

Every presumption is in favor of the validity of an act of the legislature, and where the objections to it do not reach

the subject-matter, but are confined to criticisms upon its form or phraseology, the objections should be disregarded. *Sanborn* v. *Comm'rs of Rice Co.*, 9 Minn. 273 ; *People* v. *Supervisors of Orange*, 17 N. Y. 235 ; *Fletcher* v. *Peck*, 9 Cranch, 87 ; *Ogden* v. *Saunders*, 12 Wheat. 213 ; *Hartford Bridge Co.* v. *Union Ferry Co.*, 29 Conn. 210 ; *Wellington* v. *Petitioners, etc.*, 16 Pick. 87 ; *Sun Mut. Ins. Co.* v. *City of New York*, 5 Sandf. 10.

The act embraces but one subject, which is sufficiently expressed in its title. It provides for a license, and the revenue incidentally derived therefrom is appropriated to the asylum. The relation between the business of selling liquor and the necessity for providing a home for inebriates is so intimate and natural that these subjects are properly provided for in one act and under one title. *Supervisors of Ramsey Co.* v. *Heenan*, 2 Minn. 330 ; *Tuttle* v. *Strout*, 7 Minn. 465 ; *State* v. *Gut*, 13 Minn. 341; *Stuart* v. *Kinsella*, 14 Minn. 524 ; *Atkinson* v. *Duffy*, 16 Minn. 45 ; *People* v. *Mahaney*, 13 Mich. 481 ; *Mills* v. *Charleton*, 29 Wis. 400 ; *Firemen's Benevolent Ass'n* v. *Lounsbury*, 21 Ill. 511.

The act is a proper exercise of the police power, and the raising of a revenue its incidental object. The police power extends to every department of business and reaches every interest of the citizen. It regards the safety, comfort and welfare of society, and the prevention of intemperance, pauperism and crime. *Com.* v. *Alger*, 7 Cush. 53, 85, per Shaw, C. J. ; *Thorpe* v. *Rutland & Burlington R. Co.*, 27 Vt. 140, 149, per Redfield, C. J. The necessity and extent of the exercise of this power is a matter dependent on the judgment and discretion of the legislature, and, unless this discretion is grossly and manifestly abused, the courts will not interfere. *City of St. Paul* v. *Colter*, 12 Minn. 41 ; *License Cases*, 5 How. 504, 592, per McLean, J. ; *Slaughter House Cases*, 16 Wall. 36.

The liquor business is a proper subject for the exercise of the police power. The act in question, as it imposes a bur-

den upon the business by requiring a license, operates to some extent as a restriction upon it; and it is not a valid objection to the act that no discretion is required to be exercised by any officer in the granting of licenses, or that no bonds are required of the licensee. All these matters are provided for by Gen. St. ch. 16, with the provisions of which a person must comply before he can engage in the business at all. It is no objection to the act that a revenue is derived from the license by the state. *City of Rochester* v. *Upman*, 19 Minn. 108; *City of St. Paul* v. *Colter*, 12 Minn. 41; *Tenney* v. *Lenz*, 16 Wis. 566; *City of Boston* v. *Schaffer*, 9 Pick. 415; *Chilvers* v. *People*, 11 Mich. 43.

If the court should be of opinion that the act cannot be sustained as an exercise of the police power, but is the exercise of the power of taxation, then it is valid exercise of that power under Const. art. 9, § 1.

Indirect taxes are not thereby prohibited, and such taxes are " as nearly equal as may be" when they are uniform throughout the state, and laid on all persons engaged in the business or vocation taxed. The power of taxation in the manner provided by this act is possessed by the legislature unless plainly prohibited by this provision of the state constitution. *Page* v. *Allen*, 58 Penn. St. 338; *Matter of Van Antwerp*, 56 N. Y. 261; *Sanborn* v. *Comm'rs of Rice Co.*, 9 Minn. 273. The power of taxation is essential to the existence of any government. Taxes are either direct, as the poll tax, highway labor tax, military service, income tax, property tax, and stamp tax; or indirect, as customs, or taxes on imports and exports, excise duties or taxes on domestic production, and licenses or special taxes on business or vocations, which last are, in fact, a species of excise tax. The defendant's claim is substantially that all taxes, except the direct property tax, are denied to the state government by the constitution; that the incidental revenue arising from the exercise of police power and this direct property tax are its only sources of revenue in any contingency. Such a limitation upon the

power of self-preservation by the state ought to be couched in no ambiguous or doubtful language, and its reason should be obvious. The only purpose of Const. art. 9, § 1, is to secure equality—a just and even distribution of the public burthens. In taxation, equality is equity. All taxes, direct or indirect, must be equitably distributed among the tax payers, and direct taxes must be imposed in proportion to the cash value of the property taxed, equalized and uniform throughout the state. All taxes, except customs, may be laid by the state. They can only be imposed by the people represented in the legislature, and no occasion has ever existed for denying the people the power to tax themselves for public purposes in any way deemed advisable so long as partial and inequitable schemes for revenue, such as may be devised by persons and corporations seeking to evade their fair share of taxation, are prohibited.

Licenses and excise imposts are the fairest and most evenly distributed of all taxes, except income taxes. Though paid at first by the persons engaged in the business taxed, they are in the end equitably distributed among their customers and the community at large by a natural law superior to any arbitrary tax levies that can be devised. Direct property taxes become unequal by the evasions of property owners, the infirmity of judgment of the officers as to values, and various other causes, none of which disturb the eventual equality of licenses and excise taxation. Smith, Wealth of Nations, book 4, ch. 2; Walker, Science of Wealth, book 4, ch. 8–14; Mill, Polit. Econ., book 5, ch. 6.

The constitutions of Michigan, Wisconsin, Indiana and Illinois contain provisions as to uniformity and equality of taxation similar to that in the constitution of this state; but in Michigan it is held that specific taxes may be laid on business and vocations, and are not prohibited. *Walcott* v. *People*, 17 Mich. 68; *Kitson* v. *Mayor, etc., of Ann Arbor*, 26 Mich. 325. In Wisconsin the question at bar does not seem to have arisen, but it is held that the provision does

not apply to assessments or special taxes for municipal improvements. *Bond* v. *City of Kenosha*, 17 Wis. 284; *Weeks* v. *City of Milwaukee*, 10 Wis. 242; *Knowlton* v. *Supervisors of Rock Co.*, 9 Wis. 410; *Gilman* v. *City of Sheboygan*, 2 Black, 510. In Indiana taxes imposed not merely for revenue, but in restraint of particular callings, or as a license on particular pursuits, are held not to come within this provision. *Bright* v. *McCullough*, 27 Ind. 223. In Illinois this provision was held not to prohibit taxes other than taxes on property, and a poll tax for highways, payable in labor, was held valid. *Sawyer* v. *City of Alton*, 3 Scam. 127. In Massachusetts the courts have sustained, as constitutional, license fees exacted of attorneys, auctioneers, tavern-keepers, retailers, banks, etc., provided that taxes of this sort are equal—that is, that they operate on all persons following the vocation that is taxed. *Portland Bank* v. *Apthorp*, 12 Mass. 252; *Com.* v. *People's Five Cents Savings Bank*, 5 Allen, 428.

The constitution of Iowa contains no similar provision, but requires that all laws of a general nature shall have a uniform operation. The power of taxation in that state is contrasted with the power under constitutions of other states in *U. S. Express Co.* v. *Ellyson*, 28 Iowa, 370.

The United States constitution requires that all excises, etc., shall be uniform, that direct taxes shall be apportioned among the states according to population, and that no tax shall be laid on exports. Art. 1, §§ 2, 8, 9. Under these provisions, license taxes, like that in question, have been held to be indirect taxes, and have often been imposed. *Hylton* v. *U. S.*, 3 Dall. 171; *Veazie Bank* v. *Fenno*, 8 Wall. 533; *Pacific Ins. Co.* v. *Soule*, 7 Wall. 433.

A tax law which embraces all who are engaged in the particular business or calling taxed fulfils the constitutional requirement that taxation shall be equal and uniform. *Hodgson* v. *City of New Orleans*, 21 La. Ann. 301; *State* v. *Schlier*, 3 Heiskell, 281; *Fire Department* v. *Noble*, 3

E. D. Smith, 440; *Bohler* v. *Schneider*, 49 Ga. 195. This court has sustained the statute imposing a tax on suitors in aid of the jury fund (*Adams* v. *Corriston*, 7 Minn. 456,) and a municipal tax on polls. *City of Faribault* v. *Misener*, 20 Minn. 396. In the absence of any express constitutional requirement the legislature must observe fair proportion and equality in levying taxes. Cooley Const. Lim. 495–502. Yet taxes like that now in question have been sustained in New York, Pennsylvania, Connecticut, Vermont and other states, where the constitution is silent as to equality. There is probably no state which does not levy other taxes than those imposed on property. License fees, when imposed for revenue, are taxes, and it is evident that the constitutional requirement that taxes on property shall be according to value does not include every species of taxation, but only property taxes, strictly so called. Cooley Const. Lim. 497; *People* v. *Mayor of Brooklyn*, 4 N. Y. 419.

The fifth section of the act, which makes the non-payment of the license a misdemeanor, and punishable as such, is a legitimate mode of enforcing the payment of such a tax. *License Tax Cases*, 5 Wall. 462.

CORNELL, J. The sole question presented for consideration in this case relates to the constitutionality of Laws 1873, ch. 10, entitled "An act to establish a fund for the foundation and maintenance of an asylum for inebriates." Its unconstitutionality is rested on the ground that it imposes a specific tax upon a class of persons engaged in a particular business, and is, therefore, in conflict with § 1, art. 9, of the constitution, which requires that "all taxes to be raised in this state shall be as nearly equal as may be, and all property on which taxes are to be levied shall have a cash valuation, and be equalized and uniform throughout the state." It is admitted that the state, through the exercise of its police power, has an undoubted right to prescribe all needful rules and regulations in respect to the traffic in spirituous liquors, and that if the act in question is a proper

and legitimate exercise of that power, it is not a violation of the constitutional requirements of equality and uniformity in the imposition of taxes. It is strenuously denied by the defendant, however, that the law under consideration is one of this character. It is argued that its object is, as indicated by its title, the creation of a fund for a specific purpose, and that, therefore, it is not an act to regulate the sale of intoxicating liquors, and cannot be held to be an exercise of the police power. If, however, such is not its purport and meaning, then its title is a misnomer, and the law must fail because of its repugnancy to art. 4, § 27, of the constitution, which provides that " no law shall embrace more than one subject, which shall be expressed in its title." As the title indicates one thing, and the body of the act another and different thing, the law itself is a nullity. This, in brief, it is believed, is a fair statement of the argument and grounds upon which the invalidity of the act is rested.

Section 1 of the act provides that " all keepers of saloons, groceries, restaurants, drug stores, wholesale or retail liquor stores, hotels, breweries, or other places where spirituous, vinous or malt liquors are sold or kept for sale within this state, shall, before they shall be permitted to sell or dispose of such spirituous, vinous or malt liquors, take out, or cause to be taken out, a special license, (in addition to any and all other license or licenses which they are or may be required, by any law, ordinance, or municipal regulation, to take out,) paying therefor the sum of ten dollars to the county treasurer of the proper county ; " and it further provides for the issuing of such license by the county auditor of the county wherein the business so licensed is transacted, which shall be good for one year. The next three sections provide for setting apart in the state treasury all moneys received from the issuing of such licenses, as a separate fund, to be known as the " State Inebriate Asylum Fund," and devoting the same exclusively to the establishment and maintenance of a state asylum for ine-

briates. Section 5 makes it a misdemeanor for any one to sell or otherwise dispose of any such liquors without license, and prescribes a punishment by fine for every such offence.

It is very apparent from these provisions that the law, in effect, is one further regulating the traffic in intoxicating drinks. Such is manifestly one of its objects, and its principal features and provisions accord with this idea. It requires of those desiring to prosecute the business the procuring of a special license as a condition precedent to the exercise and enjoyment of such right. It regards the traffic as one tending to produce intemperance, and as likely, by reason thereof, to entail upon the state the expense and burthen of providing for a class of persons rendered incapable of self-support, the evil influence of whose presence and example upon society is necessarily injurious to the public welfare and prosperity, and, therefore, calls for such legislative interposition as will operate as a restraint upon the business, and protect the community from the mischiefs, evils and pecuniary burthens flowing from its prosecution. To this end the special license is required, and the business restricted to such persons as are willing to indemnify the state, in part, against such its probable results and consequences, by contributing towards a fund that shall be devoted exclusively to that purpose in the manner indicated in the act. That these provisions unmistakably partake of the nature of police regulations, and are strictly of that character, there can be no doubt, nor can it be denied that their expediency or necessity is solely a legislative, and not a judicial, question. *City of St. Paul* v. *Colter*, 12 Minn. 41, 48 ; *Fire Dep't of Milwaukee* v. *Helfenstein*, 16 Wis. 136 ; *Tenney* v. *Lenz*, Id. 566.

Regarding the law as a precautionary measure, intended to operate as a wholesome restraint upon the traffic, and as a protection to society against its consequent evils, the exacted fee is not unreasonable in amount, and the purpose

to which it is devoted is strictly pertinent and appropriate. It could not be questioned but that a reasonable sum imposed in the way of an indemnity to the state against the expense of maintaining a police force to supervise the conduct of those engaged in the business, and to guard against the disorders and infractions of law occasioned by its prosecution, would be a legitimate exercise of the police power, and not open to the objection that it was a tax for the purpose of revenue, and, therefore, unconstitutional. Reclaiming the inebriate, restoring him to society, prepared again to discharge the duties of citizenship, equally promotes the public welfare, and tends to the accomplishment of like beneficial results, and it is difficult to see wherein the imposition of a reasonable license fee would be any the less a proper exercise of this power in the one case than in the other. The purpose to which the license fund created by the act is designated is more consonant to the idea of regulating the traffic and preventing its evils than is the case under the general license law, which devotes the fees received to common school purposes, and we are not aware that any objection has every been urged against that law on that account. In the case of *City of St. Paul* v. *Colter*, 12 Minn. 41, this court upheld an ordinance regulating and licensing butchers' shops, etc., which fixed the license at $200.00, and sustained the action of the legislature in giving to the common council the power of prescribing what sum should be paid for each such license, provided it was not less than five, nor more than five hundred dollars; and in regard to the point made in that case, that such license fee was for the purpose of a revenue, the court observed that "it was not at all important whether the license produced a revenue to the city or not." So in *City of Rochester* v. *Upman*, 19 Minn. 108, "the licensing and regulation of the dangerous traffic in intoxicating liquors" was recognized and approved as "an almost universal mode of exercising the police power," and "the objection that the license fee

v.22m—21

was unconstitutional, as imposing an unequal tax," was de-.
clared to be " fully met by the consideration that the license
was imposed, not as a tax, but as an incident—and, in the
opinion of the law-making authority here and elsewhere, a
just and reasonable incident—of the exercise of the police
power."

These cases are decisive of the present, unless the law
must fail by reason of its alleged defective title in not in-
dicating with sufficient certainty its subject, which, by the
constitution, is required to be expressed in the title.   Const.
art. 4, § 27.   The well-known object of this section of the
constitution, which declares that "no law shall embrace
more than one subject, which shall be expressed in its title,"
was to secure to every distinct measure of legislation a
separate consideration and decision, dependent solely upon
its individual merits, by prohibiting the fraudulent insertion
therein of matters wholly. foreign, and in no way related to
or connected with its subject, and by preventing the combi-
nation of different measures, dissimilar in character, pur-
poses and objects, but united together with the sole view,
by this means, of compelling the requisite support to secure
their passage.   *Supervisors of Ramsey Co.* v. *Heenan*, 2
Minn. 330.   It was not intended, however, nor should it be
so construed as " to embarrass legislation by making laws
unnecessarily restrictive in their scope and operation, and
multiplying their number."   This, together with the
difficulty often experienced in accurately stating, in a title
of the requisite brevity and conciseness, the subject of an
enactment, so as fully to express, not only its general
character, but all its objects and provisions, has necessarily
and universally induced the courts to adopt a liberal rule
of construction in considering constitutional limitations upon
legislative power of this character.   *People* v. *Mahaney*, 13
Mich. 481; *Bright* v. *McCullough*, 27 Ind. 223.

A brief reference to the authorities in this state will show
the extent to which this rule has been carried by this court,

and enable us the better to determine the question as to the effect of the constitutional requirement upon the law under consideration. The leading case upon this subject is that of *Supervisors of Ramsey County* v. *Heenan*, 2 Minn. 330. The title of the act considered in that case was " An act to provide for township organization." It contained many articles, some of which related principally, if not entirely, to the organization of county governments, and the corporate powers and duties of counties, and the officers and boards by whom such powers and duties should be exercised, and matters of a like nature. It is quite apparent that nothing of this character was *expressed*, or verbally indicated, in the title of the act, nor was its purpose declared to be the creation of county governments, and prescribing rules and regulations in regard thereto. The court, in adverting to this fact, says: "It is true that this act, in the technical sense, does embrace more than one subject, and but one is expressed in its title; yet so intimately blended are they in the popular understanding, and so inseparable by general custom and adoption, that although the technical sense may bring it within the letter of the constitution, it leaves it entirely without the spirit. There is no attempt at fraud, or the interpolation of matter foreign to the subject expressed in the title, but an honest effort to create a system of town and, through the town, county government, similar to that of other states;" and on this ground the act was sustained, and its title held to be sufficiently specific and suggestive of its various objects and provisions to meet the constitutional requirement. Again, this matter was before this court in the case of *Atkinson* v. *Duffy*, 16 Minn. 45, when the question presented was whether a section embodied in a law entitled " An act to regulate the foreclosure of real estate," which authorized the mortgagor, by an instrument in writing executed at the time of his giving the mortgage, to waive his right of redemption, was sufficiently indicated by such title. Strictly speaking, it will hardly be claimed

that a rule prescribing what kind of a mortgage contract a party may make is a regulation of the mode and manner in which such contract shall be foreclosed, and yet the court held the title in that case sufficiently expressive and indicative of the subject of the act to cover the provision, " within the liberal rules which it is indispensable to apply in the construction of the constitutional provision on this subject." In deciding that case the court cites approvingly the rule as stated in *Stuart* v. *Kinsella*, 14 Minn. 524, and says : " As the regulation of the right of redemption, and of the right to waive redemption, to a certain extent gives character to, and determines the effect of, the sale, it is no great stretch of language to speak of the rules prescribed in regard to them as regulating the foreclosure."

The rule of construction established by these cases is still unquestioned in this court, and must, if adhered to, be decisive of the case now before it. Under such rule, as exemplified by these cases, if the legislature is fairly apprised of the general character of an enactment by the subject as expressed in its title, and all its provisions have a just and proper reference thereto, and are such as, by the nature of the subject so indicated, are manifestly appropriate in that connection, and as might reasonably be looked for in a measure of such character, then the requirement of the constitution is complied with. It matters not that the act embraces technically more than one subject, one of which only is expressed in the title, as was the case in the township organization act, (*Supervisors of Ramsey County* v. *Heenan*, 2 Minn. 330,) so that they are not foreign and extraneous to each other, but " blend" together in the common purpose evidently sought to be accomplished by the law. Neither is it important that all the various objects of an act be expressly stated in its title, nor that the act itself indicate objects other than that so mentioned, provided they are not at variance with the one so expressed, but are consonant therewith. Most laws have several objects in view. All

criminal legislation has reference, or ought to have, not only to the definition of the offence and the punishment of the offender, but the suppression of the crime and the reformation of the criminal; yet an express indication of one only of these objects in the title of an act would not, therefore, make it unconstitutional. Besides, the "subject" of the act, and not the "object" had in view by its enactment, as is the case in some of the states, is what is required by this clause of our constitution.

The law in question, as expressed in its title, was one "to establish a fund for the foundation and maintenance of an asylum for inebriates." How this was to be done, by what means the fund was to be created, through the exercise of what particular power—whether the taxing, police, or some other—is not so expressly indicated, neither is there anything in the constitutional provision requiring it. It is not denied but that all the provisions of the law are appropriately adapted to the creation of the fund for the purpose indicated. It is claimed, however, that as the expressed object was to create a fund, etc., it must be inferred that it was to be done through the exercise of the power of taxation for revenue purposes alone. This does not follow, provided it might be raised by the legitimate exercise of the police power in regulating the business of selling liquor, and of this there can be no doubt, in view of the uniform current of authority upon that matter.

It can hardly be contended that an act, professedly for the purpose of regulating this traffic, that should require, as a condition of its prosecution, the procuring of a license therefor by the payment of $110.00, and that should contain provisions similar to those contained in this act, devoting $10.00 thereof to a fund for inebriates, and the rest to common school purposes, as is now the case under the general law upon this subject, would transcend the limits of legislative power, or be declared repugnant to said section of the constitution, because nothing was indicated in the title in regard to the creation of

the inebriate fund; and yet this is substantially the present act, considered in connection with Gen. St. ch. 16. Its only difference consists in the fact that the regulation of the traffic is not verbally expressed in its title. Such regulation, however, is suggested, if not necessarily implied, by the subject so mentioned, not only as pertinent, but peculiarly appropriate in connection therewith. The business and its consequences are so closely and intimately connected, both in the "popular" and legislative understanding, that proposed action in regard to the one almost of necessity suggests its propriety as to the other. Provisions to regulate the traffic, and such as are designed to alleviate its evils through the establishment and maintenance of an inebriate asylum, have both, as their common and ultimate object and sole justification, the good order of society and the promotion of the public welfare. If the business is the immediate and efficient cause of the evil effects which it is the manifest purpose of this law to lessen—and of this the legislature is the sole judge—then, certainly, provisions inserted therein, calculated alike to remove such effects and to check the producing cause, cannot be regarded as so foreign and irrelevant to each other, and to the subject indicated by the title, as to invalidate it on that account. In our judgment the title is sufficiently indicative of the character of the subject of the law, and suggestive of its various provisions and objects, and the law itself should be sustained as a proper exercise of legislative power.

Judgment affirmed.

BERRY, J., *dissenting.* The act of the legislature in question in this case (Laws 1873, ch. 10,) is entitled "An act to establish a fund for the foundation and maintenance of an asylum for inebriates."

Section 1 requires all keepers of places where spirituous, vinous, or malt liquors are sold or kept for sale within this state, before they shall be permitted to sell or dispose of the same, to take out a special license, (in addition to all other

licenses required,) paying therefor $10.00 to the county treasurer, the license to be issued by the county auditor of the proper county upon presentation of the treasurer's receipt for said sum.

Section 2 requires the county treasurers to transmit the moneys received by them to the state treasurer.

Section 3 requires the state treasurer to place the moneys derived from licenses in a separate fund, to be known as the State Inebriate Asylum Fund, and to invest the same in bonds whenever the amount on hand exceeds $500.00.

Section 4 provides that the fund shall accumulate until it reaches $20,000.00, after which five commissioners shall be appointed, through whom the state shall proceed to locate and erect a state asylum for inebriates, the same to be conducted under the guardianship of the state, and " upon the same general plan as the other charitable institutions of the state," provided that it shall always be supported by and from the fund above provided.

Section 5 makes it a misdemeanor for any keeper of a place where spirituous, vinous, or malt liquors are sold, to offer, sell, give away, or in any manner dispose of any such liquors, or to permit any person to do so for him, without having first taken out the special license in the first section required, and prescribes a punishment for such misdemeanor.

I think this act is just what the legislature has declared it to be in its title, viz., " An act to establish a fund for the foundation and maintenance of an asylum for inebriates." This fund is, by the first section of the act, to be raised by the levy of forced contributions upon the members of a class of persons, to wit, upon dealers in liquor. By the fourth and fifth sections these contributions are to be accumulated into a fund, which is to be devoted to what must unquestionably be assumed to be a public purpose—a public charity. The levy of this contribution can only be defended upon the ground upon which it is sustained by my brethren in their majority opinion in this case—

viz., that it is levied in the exercise of police power—or upon the ground that it is constitutional taxation. If the case is one of the exercise of police power, it must be one in which the undertaking is to put a stop to the business of selling liquor, or in some way to regulate it. There is no attempt to do either. Under the provisions of the act any person, without reference to his character, history or responsibility, can take out the license provided for, and carry on the business in any manner in which he sees fit. In these respects it will be seen that this act differs essentially from the general license law as heretofore construed by this court in *Comm'rs of Hennepin County* v. *Robinson*, 16 Minn. 381.

So far as I can discover, the act under consideration is, then, in no sense an act *regulating* the business to which it relates. As the act in no respect undertakes to *regulate* the business in question, or the conduct of those who carry it on, I am unable to see why the relation between the business of selling intoxicating liquors and the inebriate asylum is of any importance as respects the matter of police power. I see no reason why, so far as the question of police power is concerned, the contribution required might not have been levied upon either of the learned professions as well as upon the class upon which it is levied by the terms of this act. I am, therefore, (without adverting to other important considerations,) of opinion that the act cannot be sustained as a police regulation. As taxation, I think it could not be sustained for the reason that it would not be equal, as taxation is required to be by our constitution.