---

(Summit County Common Pleas Court.)
ALBERT DEUTSCH v. THE COLUMBIA CHEMICAL COMPANY.

---

1. A way constructed and kept in repair by a private corporation, upon its own land, for its own use and the convenience of tenants occupying its dwelling houses upon both sides thereof, opening into a public street, having a sign "Private property, Trespassers will be prosecuted" at one or more points near such traveled way, but left open to public travel for several years, is not thereby dedicated to the public.

2. A person who occupies premises as the servant or agent of another for the more convenient performance of his duties, acquires no estate therein, is neither a tenant at will

nor by sufferance, even though he is permitted to carry on an independent business therein, and less wages are paid him on that account. In such, and indeed, all cases, where the possession is given for a *special* purpose the transaction is treated as a *license*, not as a lease, and does not confer any estate in the property to which it relates, and is determined whenever the *special* purpose is accomplished.

---

KOHLER, J.

This is an application for an injunction. The case was heard upon the petition and the testimony, and there is not much controversy as to the facts in the case.

The allegations of the plaintiff's petition are, in the main, admitted by the answer of the defendant. The material facts, as appears from these pleadings, and the testimony are substantially the following:

The defendant, The Columbia Chemical Company, is a corporation organized and incorporated under the laws of this state for manufacturing purposes. This company acquiring a tract of about three hundred acres of land lying principally south of the Wooster road, and adjacent to the town of Barberton in this county. The primary object of acquiring this land on the part of this company was to establish a manufacturing plant for the manufacture of "Soda Ash", involving the sinking of wells for the purpose of pumping salt water and for the erection of necessary and suitable buildings for the conversion of this brine into "Soda Ash", and its various products. These wells have been dug, pumping machinery, etc., placed, and very extensive buildings erected for the purpose of carrying on the various processes of manufacturing "Soda Ash." A large number of workmen, perhaps four five or six hundred, are employed in these various departments. Office buildings have been erected, and dwelling houses for the use and occupancy of the superintendent and other officers of the company, and upon the rear portion of this tract of land, and quite a distance south of Wooster Road, about seventy-five houses have been erected by this company for the accomodation and occupancy of its employes and workmen. All this has been done by this company within the last two or three years.

The main point of entrance, or of ingress and egress to and from this tract of land and from the shops, works and houses, is at a point on Wooster road where that highway is intersected or crossed by what is called Melvin avenue, indicated by a plat of

the *locus in quo*, hereto appended and marked "Exhibit A", which shows generally, but not with entire accuracy, the situation of the premises. This Melvin avenue extends the ordinary width of a road from Wooster road southerly to a wire fence, which incloses the defendant's land, and about 150 feet distant from Wooster road. A substantial close board fence inclosed the lands of this company. At this point where Melvin avenue ends there was a wire fence. Perhaps a year ago this wire fence was cut or opened and rolled back to the sides so as to leave an opening for a roadway · southerly through the grounds of the company and back to what is called the "Settlement," where these seventy-five houses were erected. This driveway has not been used in precisely the same place since it was first opened, but at first ran off in a easterly direction from a straight line near one of the wells now in operation. But this was abandoned and the driveway now extends in a semi-circular form along a row of houses and goes back through another fence or gateway to this collection of houses in that "settlement". This driveway is quite extensively used, presents a hard beaten track, with a cinder sidewalk on the westerly side and in front of a row of five houses used by some of the heads of the departments.

The company caused a sign board to be placed near this driveway, and perhaps a couple of hundred yards from the end of Melvin avenue, warning the public that the grounds were private and that trespassers would be prosecuted. And at a distance still further south, where there is now a fence across · the road, another sign board was placed near this driveway of the same purport. .

This collection of seventy-five houses, constituting the "settlement", was accessble from this driveway by three parallel streets, apparently running parallel with Wooster road. These streets were three in number. And upon these streets these houses were erected, and about uniform in size.

These facts are set forth, in substance, in the plaintiff's petition, and it is alleged that this driveway to this "settlement" from Melvin avenue had been openly, notoriously used · by the public, and not simply by the company and its employes; that milk dealers, provision dealers, and agents of all kinds, carrying on business necessarily with the occupants of these houses, and with other persons about the premises were in the habit

of freely, without objection or obstruction, using this driveway for ingress and egress at all times. And the plaintiff alleges that he is engaged in the business of selling, at retail, wines, beers and other liquors, and that he had built up an extensive and valuable trade with the people in this "settlement", and that he had been doing this business, soliciting orders for goods, delivering the same, with the full knowledge of the defendant company and its officers, without obstruction or objection, for sometime before the particular grievance of which he complains. That these dwelling houses in the settlement were occupied—some of them at least, as boarding houses, where others than the defendant's employes were boarded and lodged; and his complaint is that at a certain date in the petition named, he was prevented from entering the defendant's premises or of carrying on his business, or selling these goods. In short, that while entering into these grounds along this driveway in the prosecution of his business and delivering these goods he was not warned to leave, but forcibly compelled to go out and off from the defendant's premises, and warned not to enter thereon again.

This the plaintiff claims was a violation of his rights, and that the defendant should be perpetually enjoined from interfering in any way with his carrying on his business in the sale, at retail, of these goods, and in the use is compelled to use in order to reach his of this driveway or road which he alleges he customers, his claim being, that under the circumstances stated, and the evidence in the case, that this driveway had acquired the character of a public road or way upon which he and all other citizens had a right to travel without objection or obstruction by the defendant company.

As stated, these facts herein recited, are, in the main, admitted by the answer; but the defendant company claims that under the law and the evidence that this is private property and not subject to any easement on the part of the public; that the driveway so-called south of Melvin avenue was not a public road in any sense, but that its use was intended for the company and its employes, and whatever use was made by others was a mere license, or permission and not in any sense a legal right acquired by the public as a public thoroughfare. And it further sets up that these dwelling houses called "The Chemical Company's Settlement" were erected by the company solely for the use of its employes

and as appurtenant to the business of manufacturing, in which the company was engaged. That these houses were leased to such employes to continue only during the time the workmen were so engaged and to terminate whenever the mployment ceased; that a certain rental was charged, which was deducted from the earnings of the occupants. And it is further alleged, that the plaintiff was delivering large quantities of intoxicating liquors to said employes in said "settlement", from the use of which many of said employes were habitually becoming intoxicated unfit to perform their work as employes and a the same time endangering their co-employes in the performance of their duties, and endangering the property of the defendant in the operation of its works. And the claim is made on the part of the defendant, in its answer, that the plaintiff was carrying on an unlawful business on defendant's property, to defendant's great and irreparable injury, and for which it could have no adequate remedy at law.

The first question, therefore, to be determined in this case is whether this road or driveway through the defendant's lands from Melvin avenue southerly to the streets and through the streets of the so-called "settlement" had acquired the character of a public way or road, and, in the opinion of the court, the case must turn upon the determination of this question; for if this three hundred acre tract of land was private property, and not subject to any easement on the part of the public of a right of way, then it was perfectly right and proper on the part of the company to refuse permission to the plaintiff, or any other person that saw fit, to enter in or upon its premises. If, upon the other hand, this thoroughfare or driveway had become at the time the plaintiff was turned out a legal highway or road open to all the public, then the plaintiff had a right there, and his ejection or refusal to allow him to enter would be unlawful, and it would be no excuse for such ejection or refusal to allow him to enter, that he was or had been engaged in the business of selling intoxicating liquors, wines and beer, for the sale of intoxicating liquors wine and beer is lawful within certain prescribed limits, and nothing appears in the evidence or in the pleadings to indicate that the plaintiff was engaged in an unlawful business, whatever might be said of the traffic on ethical grounds. However true or just the complaint of the company might be that the traffic was injurious to the workmen there engaged, and productive of lawlessness and disorder, redress would have to be sought in some other way.

The question therefore arises, is the plaintiff's contention maintainable, that he was in the lawful use of a public highway or road upon which the general public had a right at all times to travel safely and without obstruction or objection, or was this private property and not subject to the easement of a public road over and upon it?

Public roads or ways are generally created by a proceeding under the statutes providing for the establishment, opening and maintenance of public highways. The laws of this state specifically provide how and to whom the application shall be made, property condemned and the roads and streets surveyed, platted and recorded. It is not necessary to go into detail as to the steps to be taken in the opening of a road in that way, as no statutory road is claimed in this case.

Again, a way or road for the use of the public may be created by what is called a *dedication* to the public use, and it arises in the case where the public have used for years the ground as a public thoroughfare with the assent of the owner of the soil.

A right of way may also be acquired by *prescription;* that is to say, where a piece of land or a thoroughfare has been openly, notoriously and adversely used by the general public as a way or road sufficiently long under our statute of limitation to bar the right of entry by the owner, that it operates as a title in the public by prescription and becomes a legal road and highway by such continuous use.

No prescriptive title or use is claimed in this case, for it has only been a year or two, perhaps three, at most that these premises has been used for the purpose stated.

A right of way may also arise by *necessity* as where a man purchases land accessible only over land of the vendor, or sells reserving land accessible only over land of the vendee, in such case he shall have a way of necessity over the land which gives access to his purchase or reservation. The necessity, however, must be absolute, not a mere convenience.

Now, a right of way is claimed over these premises on the part of the plaintiff, first, under the common law be *dedication;* second, a way of *necessity.*

Now, what facts or circumstances will be sufficient to warrant a court in declaring private property to have been dedicated to public use either as a street, road or alley

must necessarily vary in every case. General rules may be settled, and have been settled, but after all the question is one of fact and must be governed by its own circumstances

The general rule as to dedication of land to public use is well stated in *Case* v. *Favier*, 12 Minn., 48. "When a common law dedication of land to public use is in issue, the intent to dedicate is a question of fact to be determined by all the circumstances, and the important question in a dedication of this kind is the intention of the party claimed to have made the dedication." * * * * "Intention on the part of the owner of the land to part with some right therein and to vest an easement in the public is the first essential of a valid dedication, for no one can be deprived of his property without compensation against his will." *Animus dedicandi* is the vital principle, and if this is not present the dedication fails. When the intention of the owner followed by the appropriate acts necessary to give effect to the intention, and an acceptance of the public, are shown, the dedication is established. As the intent of the owner is essential, it must be clearly and positively shown. No particular formalities, however, are necessary, but any facts or circumstances which unmistakably show such intent are admissible. This is the rule laid down in the Am. & Eng. Ency. of Law, vol. 9, pages 36 and 37; and a large number of adjudicated cases are cited upon this proposition.

The same rule as to dedication is laid down by the supreme court of the United States as follows: "There is no particular form or ceremony necessary in a dedication of land to public use; all that is required is the assent of the owner of the land and the fact of its being used for the public purposes intended by the appropriation." (30 U. S., 431).

"Acts and declarations of owners indicating the intent to dedicate property to public use must be unmistakable in their purpose and decisive in their character to have that effect." (Bass & Lake Co. v. Hollenbeck, 11 C. C. 508.

In *Winslow* v. *Cincinnati*, 6 N. P., 47, the court gives the rule as follows: "No particular words or ceremony or form of conveyance is necessary to render the act of dedicating the land to public use effectual. Anything which fully demonstrates the intention of the donor, or the acceptance by the public, works that effect."

Elliott in his work on Roads and Streets, 2nd Ed., page 133, states the rule as follows: "It is essential that the donor should intend to set the land apart for the benefit of the public, for it is held, without contrariety of opinion, that there can be no dedication unless there is intent to appropriate the land to public use. If the intent to dedicate is absent there is no valid dedication. A dedication may, however, be express or implied. It is express where there is some writing evidencing it, and the extent of the dedication in such case will be measured by the writing; but a dedication may be implied, and it is one arising by operation of law from the acts of the owner. An express grant is not necessary. It need not be evidenced by any writing, nor by any form of words, oral or written. It is not founded on grant nor does it necessarily presuppose one, but it is founded on the doctrine of equitable estoppel."

As said by the supreme court, in 6th Peters, 431, the law considers it in the nature of an estoppel *in pais* and holds it irrevocable. Indeed, the authorities show that dedications have been established in every conceivable way by which the intention of the party may be manifested. If the donor's acts are such as indicate an intention to appropriate the land to a public use, then upon acceptance by the public the dedication becomes complete.

Now, where such a dedication, either express or implied, of a public way is made and accepted by the public, it cannot be recalled or revoked by the donor. It becomes a public way for all time and for all lawful purposes.

To constitute a dedication there must be an abandonment by the owner to the use of the public exclusively, and not a mere use by the public in connection with user by the owner in such measure as they may desire. (Washburn on Easements & Servitudes p. 205).

If the owner of land open a way across it having the other *indicia* of an open way for the public he would be considered as licensing its use so long as he keeps it open, although he may by posts, gates or public notice at its entrance negative the dedication of it as a public way. So where a manufacturing company opened a street on their own premises and build houses on each side and wrought the way as a street and the houses were occupied by the operatives employed in their works, but it had not been their intention to dedicate it as a public way,

and they had posted up at the opening of the street "private way", it was held to be such only, and the city was not responsible to a person who, in passing through it, sustained injury. (See Washburn on Easements, p. 211), the case of *Duggan & Wife* against *City of Lowell,* 3 Allen 398, is directly and forcibly in point. "A way constructed and kept in repair by a private corporation upon its own land for its own use and convenience, and the use and convenience of tenants occupying its houses upon both sides thereof, opening into a public street, having a sign "private way" upon the corner, but left open to public travel for more than twenty years without interruption, is not thereby dedicated to the public, nor does it become a public way by prescription." In deciding this case the learned judge uses this language, "The question is one of much practicable importance, because so many manufacturing companies have ways of this description upon their own lands, which it is necessary for their own use and for the use of their tenants to keep constantly open and in such condition that all persons who choose can use them freely. It would be an unreasonable burden to require them to keep gates or watchmen to prevent the public from traveling over these ways, and if they did so it would be extremely difficult for them to ascertain whether those who entered upon the ways did so as mere travelers or because they had business with the company or some of their tenants." The court further remarked, "That the proprietors knew doubtless that while the streets remained open the public might use them as occasion might require, and to such use they had no objection, for they made none, and yet such use was incidental. The streets were not laid out for that purpose, but for the use of the abuttors thereon." As the travel of strangers would do no appreciable damage it should be regarded under these circumstances as permissive, and not adverse to the rights of the company, and as furnishing no evidence that the company intended to dedicate the way to public use. If the conclusion legally follows that where a manufacturing company opens ways of this description upon its own lands, which it is necessary for its own use and the use of its tenants to keep constantly open, and in such condition that all persons who choose can use them freely, that a public easement is thereby created in the lands of the owner, there would be very few manufacturing companies carrying on an exten-

sive business of manufacturing that would not be held to have opened streets and created public easements, and it seems to me, under the circumstances, that this would be unreasonable.

The presumption that the public use has been permissive and not adverse arises out of the circumstances of the the case, and there is nothing in the testimony of this case, or in the facts to which the testimony relates, to rebut this presumption.

A dedication by the owner differs from a road or way gained by prescription in this, that no specific length of time is necessary to constitute a valid dedication. All that is required is the assent of the owner of the soil to the public use and the actual enjoyment by the public for such a length of time that the public accommodation and private rights would be materially affected by a denial of the right or interruption of the enjoyment.

That a way is left open to the owner's place of business and is used by those having business with him and by the public generally, does not show a dedication of such way to the public. Such use is presumed to be under a license from the owner, for there are many circumstances connected with a man's calling which imply a license to enter his premises and do not show an intent to dedicate. Approaches to shops, stores, railroad stations, wharves, etc., have been held not to be dedicated to the public, although connected with the highways and used generally by the public for long periods of time.

Now, it is not necessary to multiply authorities upon this subject. As already stated, the law is very plain. The difficulty lies in the consideration of the facts.

It is clear from the testimony in this case that the primary object in acquiring this land and in erecting the various buildings upon it, as well as the use of the various ways for egress and ingress, was for the purpose of manufacturing "Soda Ash". The land was not purchased or acquired as an investment with a view of allotting, laying out streets and selling the same, the various dwelling houses were not put up for the purpose of selling or renting the same to the general public. They were erected for the use of employes and workmen as incidental and appurtenant to the business in which the defendant was engaged. Necessarily in carrying on such a large business and in the construction of such extensive works, there must be a large amount of coming and go-

ing, in bringing in material of various kinds and in carrying the same out, and, consequently, this necessitated driveways so as to give the defendant convenient access to the public highways. It is important to note this primary purpose and object on the part of the defendant in doing what was done in the premises, as indicating what its intentions and purposes were. Was it laying out, and dedicating streets and roads for the use of the general public? Was that its design and purpose, or was it simply making such openings and places for entrance into and upon its grounds as were necessary and proper and convenient for the carrying on of its business, and for the use of its various employes? It is important in this connection to consider, as bearing upon the question of intent to dedicate, that while these works were being constructed and after active manufacturing began, that the company, at several places at least along these traveled roads, put up signs indicating that the *locus in quo* was private property and that trespassers would be prosecuted.

Again, but a short time comparatively has elapsed since these works were erected and since these driveways began to be used, hardly long enough to indicate an intention on the part of the owners of this property to devote their land, or any portion of their land, to the general public for free and unlimited ingress and egress.

Again, this road south from Melvin avenue does not go beyond the defendant's lands. It is not connected with any other highway or public road to other points. It is true that it goes back to where there is access to these three parallel streets that divide these rows of houses; and it is true also that in the very nature of the case the families of these workmen residing in these houses, as well as the families of these officers and superintendents, living in other houses along these alleged driveways, must supply the necessaries of life, fuel, food, clothing and other things from the outside, and, hence, it is necessary, to a certain extent at least, that the butcher, baker, provision dealer and other tradesmen, and agents of various kinds of business, have and must have access to these premises, in order to conveniently accommodate people living upon these grounds and lands. Under all the circumstances of this case, all this can be done, and conveniently done, without charging the owners of this land with an intention to dedicate the lands to a general public use and making a public highway to their grounds, and the owners of this ground have the right to restrict the use of these roads and to say who shall come and who shall stay off their premises.

It is evident to the court from all the circumstances of the case that the defendant company and its officers and agents are somewhat particular in that respect. In the first place, they fenced in the entire ground with a high board fence. Their various processes of manufacture are not exhibited to the general public. They are known to themselves. The machinery that they use, and so forth, are matters that they desire, presumably, to keep within the knowledge of those that engage in the use of them, and not for general observation, scrutiny and publicity. And it appears that on one occasion at least since these works were in operation that the supeintendent of the company refused permission to men who were traveling about on their road in a buggy without having any apparent business to be there and compelled them to leave the premises.

The evidence discloses and, indeed, the view of the court confirmed the fact that various tradesmen, namely, the milkman with his milk wagon, sewing machine agent, fish dealer, provision merchant, and others, have permission at all times to enter upon or to leave these premises, in supplying goods and merchandise, provisions, etc., to the various persons employed by the defendant, but all this, is entirely consistent with the privacy and exclusiveness of private ownership, and in no rightful sense indicates a purpose or intention on the part of the owner of this land to devote it to a general public use.

These leases, which were offered in evidence, for the occupancy of these houses, clearly show that the occupants of these houses can retain only so long as they are employed by the company. The lease terminates, by its terms, at once when the employment ceases. Now, that being so, suppose the company should conclude that the business was unprofitable and wind up its affairs, discharge its workmen and require them to vacate these houses, and offers the property for sale, could it be said that after such a length of use and under the circumstances stated that the general public had acquired the easement of a way over these lands and the right to come and go whenever they saw fit? Clearly not. And, in short, without giving any consideration whatever to the claim of the defendant that the plaintiff was engaged in an unlawful business, to-wit, that of selling wines, beer and liquors, and was doing an injury to workmen, I find that there was no such public way established or in existence; that he had no right to be there

to prosecute his business in opposition to the defendant's wishes, and this would be true without regard to his business—the rule would be the same whether he was a milk dealer or fish dealer, a sewing machine agent or a doctor, or any other person that came upon the premises by mere license and permission of the defendant company.

It is quite clear from all the circumstances of this case and the surroundings that those who come there and enter upon these premises, go back upon these grounds, upon these driveways, and through these streets between houses, do so by the permission and license of the company, which can be revoked as to any person at any time by the company.

The right of the plaintiff and the way upon these lands of the defendant is also placed upon the ground that it was and is a way of necessity; that is, that the only means of egress and ingress of the owners and occupiers of these tenant houses in the "settlement" so-called, is by and over this road or way and that, therefore, there arises out of the circumstance of the case *a way of necessity.*

The doctrine is a general one, that the grant of a thing carries all things as included without which the thing granted cannot be enjoyed, by which to be understood things incident and directly necessary to the thing granted. When the use of a thing is granted everything is granted by which the grantee may have and enjoy such use, as if a man gives me a license to lay pipes in his land to convey water to my cistern, I may afterwards enter and dig the land to lay pipes, although the soil belongs to another and not to me. It is upon this principle that ways of necessity pass with lands when granted, and although ordinarily treated of as a class distinct from those created by grant, they are in fact acquired in that way as being incident to the principal thing granted, and the same principle applies to cases of devises of lands. One devisee, if necessary, may pass over land devised to another in order to gain access to that which has been devised to himself. So if one grant a parcel of land which is so connected with another parcel belonging to him that he cannot have access to the latter only over the granted parcel, the law reserves to him the right to pass over the same as a *way of necessity,* but it must be strictly a way of necessity, and great convenience will not be sufficient. And Washburn, in his work on Easements and Servitudes gives numerous illustrations of what may constitute a way of necessity.

A right of way of necessity is thus stated by an elementary writer: If a person having a close bounded on every side by his own lands

grants the chose to another, the grantee shall have a way to the close as incident to the grant, or, as it is sometimes termed, a way of necessity; for otherwise he cannot derive any benefit from the grant. This was the common law of England many hundred years ago, and this right is limited apparently to cases where a man purchases land accessible only over the land of another, or sells reserving land accessible only over the land of the vendee.

Now, it is claimed on behalf of the plaintiff that a way of necessity exists in this case inasmuch as the tenants of these seventy-five houses standing upon the lands of the Columbia Chemical Company have no egress or ingress except over this way and that, therefore, the company having granted or leased these houses to these tenants, that a right of way passes not in gross, but as appurtenant to the lease under which these tenants were occupying. Now, if this defendant company had sold and conveyed by deed one or more of these dwelling houses together with the land upon which they stand, a right of way under the common law definition would have passed as appurtenant to such conveyance, for there would be no egress or ingress to the public highway except over the defendant's land. And it is claimed that the same rule applies in this case, and that the lessee or occupant, or occupants, of the dwelling houses are upon the same footing so far as a right of way is concerned that a purchaser of the title would stand.

One or more of the leases which the company gives to its tenants or workmen upon entering or occupying these dwellings was offered in evidence, and these leases are in the usual form, except that the term granted is simply for the time during which the tenant or employe is employed by the company, and that, therefore, whenever the company sees fit to discharge one of its workmen or such workmen accepts employment elsewhere, the lease terminates.

Now, it may be conceded that if this Columbia Chemical Company leases these houses at a certain rental to persons other than its own employes for a definite term, that the company could not exclude them from access to the public highway and shut them in upon its own lands. A right of way out and in would follow as a necessary and legal inciden to the making of the lease and to the relation of landlord and tenant, and if that way was the one which had been opened up and used in that connection, then such tenant could not be excluded from such use, nor could those with whom such tenant has business relations be excluded.

It would, therefore, seem to the court that if a lessee of the premises had such right of way of necessity, that the members of his family and tradesmen supplying his family's wants and necessities in the usual manner would have the same right of egress and ingress.

The case of *Powers* v. *Harlow,* supreme court of Mich., reported in the 191 N. W., 257, would seem to be in point upon this proposition.

But this evidently relates to the case of landlord and tenant, and the question is this: Does it apply under the circumstances of this particular case? It would logically follow that if a tenant of the premises stands on the same footing as a purchaser of lands wholly inclosed by the lands of the grantor, and has the right of ingress and egress by a way over the lands of the grantor, that such tenant would have the right to have his friends visit him, and not only that, but the milk man would have the right to drive in and out, so would the butcher and others, (I might include the man that sold the liquor etc.,) having proper business with him would have the right of ingress and egress in the carrying on of their business, but evidently all such persons coming upon and over the right of way so claimed would have no greater right or better right than the tenant himself, and in these leases there is a proviso to this effect, "nor shall liquor, whether spirituous, vinous or fermented, be sold either at wholesale or retail on said premises, without the consent, in writing, of the first party (The Columbia Chemical Compay)." Now if the tenant himself could not do this without forfeiting the lease, can anyone whose right of passage or way depends entirely upon the rights of the tenant sell intoxicating liquors in violation of this lease? The tenants themselves do not sell the intoxicating liquors. It appears they buy of the plaintiff and his agents, but if it would constitute a violation of this lease for he tenant to sell intoxicating liquors upon the premises, then can anyone go upon these premises or this right of way and prosecute a business that the tenant may not prosecute or carry on? This may well be doubted. But I do not base this decision upon that ground.

Regard must be had to the nature of this relation of landlord and tenant, and its incidental connection with the manufacturing business in which the company was engaged.

The leases in this instance are to be distinguished from leases of the ordinary kind. The possession of these dwelling houses was for a special purpose. These dwelling houses were erected by the company upon its own grounds, and evidently for the purpose of having their workmen close at hand and somewhat under the supervision of their employer. The place is somewhat remote from the town of Barberton, and it is no more than reasonable to suppose that one object of the employer was to have his employes as far as possible free from the allurements and temptations of places where intoxicating liquors were sold. There were a large number of these men employed, and it is doubtless an object on the part of the employer to have them at all times in good health and also in good condition physically for the performance of their respective duties and for the work in which they were engaged. A rental was charged for the use of these houses, which was taken from the compensation of the employe.

Now, it is true that this was not in the ordinary sense of the term a domestic employment or service in which these employes, were engaged. Many of these workmen are skilled employes, experts and trained in the particular branch of manufacture in which the company is engaged. They come, however, within the general designation of the law of master and servant as those terms are used in law, precisely as a railroad employe, engineer or conductor comes within the general designation of the law relating to master and servant. Now, where a servant or employe occupies premises of the master he stands in a somewhat different relation from one who is simply a lessee of the premises. The rule laid down in Wood on Landlord and Tenant, page 73. "A person who occupies premises as the servant or agent of another for the more convenient performance of his duties, acquires no estate therein, is neither a tenant at will nor by sufferance, even though he is permitted to carry on an independent business therein, and less wages, are paid him on that account. In such cases, and, indeed, in all cases, where the possession is given for a special purpose, the transaction is treated as a license and not as a lease, and does not confer any estate in the property to which it relates, and is determined whenever the special purpose is accomplished."

The occupancy of a servant of premises of the master for the more convenient performance of his duties, or as a mere remuneration for services, is, in law, the occupation of the master, and not the servant. The master in such case has never parted with the possession of his premises, the servant's possession being regarded as the possession of the master, hence the master is not a trespasser if he enters forcibly and expels him with a strong hand.

If the occupation is connected with the service or if it is required expressly or impli-

edly for the necessary or better performance of the service, then it is for his benefit and he continues in possession.

. The evidence in this case satisfies the court that the occupancy of these dwelling houses was dependent upon and necessarily connected with the service in which the occupants were engaged, and in such cases where the occupancy is so connected with the service and in part payment of it, there is no independent occupation and the occupancy is that of the master.

It is clear that while these workmen and employes occupying these dwelling houses had had the right not only to occupy the dwelling houses under the leases given them, so long as they complied with them, but that they had the right also of being upon the premises and passing along this traveled way. They were upon the premises of the master and their possession was the possession of their employer and continued so while they were in the discharge of their respective duties, but it does not follow from this that others seeking to do business with these employes had the right to come upon these premises, enter these houses, or do business with these tenants, in opposition to and against the will of the owners of the premises.

It follows from what has been stated that the restraining order heretofore issued is vacated, and the petition of the plaintiff is dismissed at his costs.

*Young & Wanamaker,* and *E. W. Stuart,* for Plaintiff.

*Allen & Cobbs,* for Defendant.