ASSOCIATED BUILDERS AND
CONTRACTORS, et al.,
Respondents,

v.

The Honorable Jesse VENTURA, et al.,
petitioners, Appellants, Defendants,

Granite City Electric, Inc., et al., Inter-
national Brotherhood of Electrical
Workers, Local 292, petitioners, Ap-
pellants, Intervenors.

Nos. C8–98–1383, C1–98–
1385, C4–98–1428.

Supreme Court of Minnesota.

March 31, 2000.

Felhaber, Larson, Fenlon & Vogt, Paul
J. Zech, Minneapolis, Miller, O'Brien,
Bloom, Richard A. Miller, Brendan D.
Cummins, Minneapolis, Mike Hatch, Attor-
ney General, Kenneth E. Raschke, Jr., As-
sistant Attorney General, St. Paul, for Ap-
pellants.

Burk & Seaton, Douglas P. Seaton, Rob-
in N. Kelleher, Edina, for Respondents.

Knutson, Flynn, Deans & Olsen, P.A.,
Joseph E. Flynn, St. Paul, for Amicus
Curiae Minnesota School Boards Associa-
tion.

Hammargern & Meyer, P.A., David D.
Hammargren, Edina, for Amicus Curiae
Minnesota State Senators.

Moss & Barnett, P.A., Vincent J. Fahn-
lander, Minneapolis, for Amicus Curiae
Employer's Association, Inc.

## OPINION

STRINGER, Justice.

An amendment to the prevailing wage law providing that prevailing wages must be paid in all construction or remodeling projects of educational facilities exceeding $100,000 was enacted as part of a 1997 omnibus tax bill relating to tax relief and reform. Respondents Associated Builders and Contractors (Associated Builders), Independent School District No. 882 (ISD 882) and Wright Electric, Inc. (Wright Electric) challenge the constitutionality of the amendment claiming it violates the Single Subject and Title Clause of the Minnesota Constitution, Article IV, Section 17, which states "No law shall embrace more than one subject, which shall be expressed in its title."[1] The district court granted respondents' motion for summary judgment ruling that the amendment violates both clauses of Section 17. The court of appeals affirmed, holding that the prevailing wage amendment was "not remotely related [to the bill's subject of] tax reform and relief," and that the title provision was violated because the title made no reference to topics such as "prevailing wage," "school districts" or "labor." *Associated Builders and Contractors v. Carlson*, 590 N.W.2d 130, 136 (Minn.App.1999). The court of appeals then severed the amendment pursuant to Minn.Stat. § 645.20 (1998) permitting severance of an unconstitutional provision where it is unconnected to the remaining provisions of the law. *See Associated Builders and Contractors*, 590 N.W.2d. at 137. We affirm the court of appeals.

The appropriate context for our analysis begins with a brief history of the prevailing wage law and passage of the challenged amendment.[2] The prevailing wage law–a law requiring the payment of wages on projects financed with state funds to be comparable to wages paid for similar work in the community as a whole–was first introduced as House File 134 on January 11, 1973 and was the subject of hearings both in the House Labor–Management Relations Committee and Senate Committee on Labor and Commerce.[3] It was passed by a house vote of 84–39, by the senate 56–0 and was enacted as chapter 724 on May 24, 1973.[4] The purpose of the prevailing wage law is explained in the statute's preface:

> It is in the public interest that public buildings and other public works be constructed and maintained by the best means and highest quality of labor reasonably available and that persons working on public works be compensated according to the real value of the services they perform. It is therefore the policy of this state that wages of laborers, workers, and mechanics on projects financed in whole or part by state funds should be comparable to wages paid for similar work in the community as a whole.

Minn.Stat. § 177.41 (1998). The statutory scheme requires that employees working on certain state funded construction projects be paid an hourly wage based on

---

1. This single subject and title provision was originally Minnesota Constitution, Article IV, Section 27. In 1974 it became Section 17. Minn. Const. art. IV, § 17.

2. The prevailing wage law is found in Minn. Stat. §§ 177.41–.44 (1998).

3. *See* 1 Journal of the House of Representatives 116, 666 (68th Minn. Leg. Jan. 11 and Mar. 15, 1973); 1 Journal of the Senate 861 (68th Minn.Leg. Mar. 29, 1973); 2 Journal of the Senate 2186 (68th Minn.Leg. May 3, 1973).

4. *See* 1 Journal of the House of Representatives 965 (68th Minn.Leg. Mar. 28, 1973); 2 Journal of the Senate 3093 (68th Minn.Leg. May 16, 1973). The original Act was entitled "An act relating to labor * * * prohibiting wage rates lower than prevailing wage rates * * *." Act of May 24, 1973, ch. 724, 1973 Minn. Laws 2077. The words "financed in whole or in part by state funds" were added to Minn.Stat. § 177.41 in 1975 by a bill entitled "An act relating to labor; providing for the determination of prevailing wage rates for state financed projects * * *." Act of May 17, 1975, ch. 191, 1975 Minn. Laws 521.

prevailing wages in the area. *See id.* A project is defined as the "erection, construction, remodeling, or repairing of a public building or other public work financed in whole or in part by state funds." Minn.Stat. § 177.42, subd. 2 (1998).

In 1995, in *NewMech Cos., Inc. v. Independent Sch. Dist. No. 206*, 540 N.W.2d 801, 803 (Minn.1995), we held that the prevailing wage statute language "financed in whole or part by state funds" did not include state aid payments to school districts through Debt Service Equalization Aid (DSEA) or Homestead and Agricultural Credit Aid (HACA) because those payments were intended to provide property relief to taxpayers, not to subsidize construction costs. *NewMech* thus narrowed the prevailing wage law by limiting its application to direct state funding only. *Id.* at 805.[5]

In response to our decision in *NewMech*, and with the stated purpose of overturning it, an amendment to the prevailing wage law's definition of "project" was introduced in the House of Representatives on March 13, 1997 and was referred to the House Committee on Labor–Management Relations.[6] There was no companion bill in the senate. House File 1512, now codified at Minn.Stat. § 123B.71, subd. 2 (1998),[7] was described by Representative Thomas Bakk as a "pretty simple little bill, four lines * * * [stating that] on school construction here in Minnesota, it [should be] public policy that any school construction over $100,000 in cost be covered by Minnesota's prevailing wage rate law."[8] The bill amends the previous definition of "project"

by including all educational facilities where the estimated cost of building exceeds $100,000:

> Minnesota Statutes, 1996, section [123B.71, subd. 2], is amended by adding a subdivision to read:

> Subd. 1A. PROJECT. The construction, remodeling, or improvement of a building or site of an educational facility at an estimated cost exceeding $100,000 is a project under section 177.42, subdivision 2.[9]

Notably the bill did not amend the prevailing wage law directly–instead, it amended Minn.Stat. § 123B.71, subd. 2, relating to "review and comment for school district construction" by adding a new definition of "project" under the prevailing wage law. Thus, only by cross reference could the amendment be tracked to its substantive effect.

During the committee meeting Tom Deans, legal counsel for the Minnesota School Board Association, offered this comment about the bill:

> This bill makes all school district projects, that are projects for purposes of the prevailing wage law, all of them over $100,000, that means whether or not there is a dime of state money that comes in * * * this would require [those districts] to pay prevailing wages as well * * *.
>
> 　* * * *
>
> 　* * * So what you're doing is, you're taking those higher costs [from paying the prevailing wage rather than a lower wage] and you're passing them onto

---

5. "Because DESA and HACA payments do not bear a direct relationship to a particular construction project, we conclude that the meaning of 'financed in whole or in part by state funds' does not encompass state aid payments to school districts through DSEA or HACA." *NewMech*, 540 N.W.2d at 805.

6. *See* 1 Journal of the House of Representatives 690 (80th Minn.Leg. Mar. 13, 1997).

7. Once enacted the prevailing wage amendment was codified at Minn.Stat. § 121.15,

subd. 1a (Supp.1997). *See* Act of June 2, 1997, ch. 231, art. 16, § 4, 1997 Minn. Laws 2629. In 1998, Minn.Stat. § 121.15, subd. 1a, was renumbered as Minn.Stat. § 123B.71, subd. 2.

8. Hearing on H.F. 1512, H. Comm. Labor–Management Rel., 80th Minn. Leg., March 24, 1997 (audio tape) (comments of Rep. Bakk, house sponsor of the bill).

9. H.F. 1512, 80th Minn. Leg.1997.

property tax payers for 20 to 30 years * * *.[10]

At the close of the committee meeting Representative Bakk moved that the bill be passed and referred to the Committee on Taxes.[11] There was little discussion of the prevailing wage amendment in the tax committee and the bill was incorporated into the Omnibus Tax Bill.[12]

Four days later, on the house floor, Representative Dee Long, Chair of the House Tax Committee, gave an overview of the Omnibus Tax Bill. She described the bill as one that "achieves both property tax relief and long-term reform and does it without raising any other taxes * * *."[13] Representative Long characterized the article in which the prevailing wage amendment was included as making "a number of miscellaneous and minor changes in tax laws."[14] Legislators questioned why a bill pertaining to prevailing wages should be incorporated in a tax bill, but an amendment to delete the provision from the tax bill was defeated by a vote of 50–81.[15]

There was no discussion on the prevailing wage amendment in the senate and, other than brief references to it during Tax Conference Committee meetings on May 13 and 16, 1997, there was no substantive discussion on the merits of the amendment or how it was related to tax relief and reform.[16] The Omnibus Tax Bill passed both legislative houses on May 19, 1997 by a vote of 127 to 6 in the house and 66 to 0 in the senate [17] and was signed into

law by Governor Arne H. Carlson on June 2, 1997.[18]

The Omnibus Tax Act, as the bill become known upon passage, is a prodigious work of legislation covering 247 pages with 16 articles and is entitled "An act relating to the financing and operation of state and local government; * * *."[19] The first 15 articles pertain to a variety of subjects including property tax reform, income taxes and property tax refunds, special taxes, regional development commissions, waste management taxes and tax increment financing. Article 16, entitled "Miscellaneous," contains 31 separate sections. The prevailing wage amendment appears as section 4 of article 16 and now appears in the statutory structure as Minn.Stat. § 123B.71, subd. 2. It is included in the statutory chapter covering school district powers and duties. *See* Minn.Stat. ch. 123B (1998).

The underlying facts of the controversy now before the court are not in dispute. In the fall of 1997 ISD 882 began preparation for bids for the construction of a new Monticello High School in Wright County to be financed by funds received by the sale of ISD 882 bonds–the parties agreed that no state funding was provided. The bids were originally scheduled to be submitted in October of 1997 but to comply with the prevailing wage amendment, ISD 882 delayed the bid deadline until December, 1997. It then requested that contractors submit two bids, one based on the prevailing wage amendment and one with-

10. Hearing on H.F. 1512, H. Comm. Labor–Management Rel., 80th Minn. Leg., March 24, 1997 (audio tape).

11. *See id.*

12. *See* Hearing on H.F. 1512, H. Comm. Tax, 80th Minn. Leg., April 21, 1997 (audio tape).

13. House debate on H.F. 2163, 80th Minn. Leg., April 25, 1997 (audio tape).

14. *Id.*

15. *See* 3 Journal of the House of Representatives 3172 (80th Minn.Leg. Apr. 25, 1997).

16. *See* Hearing on H.F. 2163, Comm. Tax Conf., 80th Minn. Leg., May 13 and 16, 1997 (audio tape).

17. *See* 5 Journal of the House of Representatives 5252–53 (80th Minn.Leg. May 19, 1997); 4 Journal of the Senate 4290 (80th Minn.Leg. May 19, 1997).

18. *See* Act of June 2, 1997, ch. 231, 1997 Minn. Laws 2640.

19. The title itself contains over 800 words. *See id.* at 2394–95.

out consideration of the prevailing wage amendment. The low bidder for the electrical subcontracting work was respondent Wright Electric at $2,217,187.00 on its bid submitted without consideration of the prevailing wage amendment. Appellant Granite City Electric was the low bidder for the electrical subcontracting work at $2,310,000.00 based on the prevailing wage amendment. ISD 882 awarded the contract for electrical subcontracting work to Wright Electric as the low bidder.

Wright Electric, ISD 882 and Associated Builders and Contractors, a construction trade industry organization, commenced this action in Ramsey County District Court on November 12, 1997 against the Governor of Minnesota, the Minnesota Commissioner of Labor and Industry, and the Minnesota Commissioner of Children, Families and Learning seeking injunctive relief and a declaration that the amendment was inapplicable by its terms or, alternatively, that it violated the Single Subject Clause of Article IV, Section 17, of the Minnesota Constitution.[20]

On cross motions for summary judgment the district court ruled that the prevailing wage act violated the single subject and title requirements of Article IV, Section 17. The court first rejected appellants' argument that chapter 231 encompassed the single subject matter of "the common notion of taxation and government operations," holding that several provisions in the Act had nothing to do with government operations and that the prevailing wage amendment was unconstitutionally adopted in violation of Section 17 beyond a reasonable doubt. The court also concluded that the Act violated the title provision, noting that although the title contained over 800 words and numerals, neither the words "labor," "wages," "school districts," "construction," and "project," nor "Minn.Stat. § 177.41" appeared in the title.

The court of appeals affirmed, also holding that the amendment violated the Single Subject and Title Clause of the Minnesota Constitution. *See Associated Builders and Contractors*, 590 N.W.2d at 137. The court reasoned that the bill's broad subject was tax reform and tax relief but the prevailing wage amendment, since it covered educational facilities built regardless of state funding, was not "remotely" related to either. *See id.* at 136. The court also observed that absent from the bill's title were words that even suggested the inclusion of the prevailing wage amendment such as "labor," "school districts," "construction" or "prevailing wages," and noted this court's repeated warnings to the legislature that omnibus bills were at high risk of running afoul of the single subject and title constitutional requirements. *See id.* at 135–36. The court then severed the amendment pursuant to Minn.Stat. § 645.20 leaving intact the remainder of chapter 231. *See Associated Builders and Contractors*, 590 N.W.2d at 135–36.

Appellants challenge the court of appeals decision, arguing that the prevailing wage amendment does not violate the Single Subject and Title Clause of Article IV, Section 17, and that, if it does, the court cannot sever it and must invalidate chapter 231 in its entirety.

## I. Constitutionality

■ In an appeal from a summary judgment where there is no dispute of material fact our review is limited to determining whether the lower court erred in its application of the law. *See Metropolitan Property and Cas. Ins. Co. v. Metropolitan Transit Comm'n*, 538 N.W.2d 692, 695 (Minn.1995). Where the constitutionality of a statute is at issue our review is de novo, *see State v. Behl*, 564 N.W.2d 560,

---

20. The trial court permitted intervention by Granite City Electric, three trade associations, the Minnesota Mechanical Contractors Association, the Sheet Metal, Air Conditioning and Roofing Contractors Association, and the National Electrical Contractors Association, and the International Brotherhood of Electrical Workers, Local 292, a labor union whose members work for Granite City Electric.

566 (Minn.1997), and we proceed on the presumption that Minnesota statutes are constitutional and that our power to declare a statute unconstitutional should be exercised with extreme caution. *See id.; State v. Merrill*, 450 N.W.2d 318, 321 (Minn.1990). The challenger of the constitutional validity of a statute must meet the very heavy burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional. *See Behl*, 564 N.W.2d at 566; *Merrill*, 450 N.W.2d at 321.

Early in Minnesota history the potential for mischief in bundling together into one bill disparate legislative provisions was well known. In the Minnesota Democratic Constitutional Convention in 1857, a proposal that addressed only the requirement that a title give some indication of the contents of the bill was amended following the comments of Mr. Meeker: [21]

> My object in moving this amendment, is to guard against a practice which has been to a greater or less extent, prevalent in this Territory, as well as in other States, of grouping together several different subjects in one bill, and passing them through by means of a system known as log-rolling.

*The Debates and Proceedings of the Minnesota Constitutional Convention* 124, 262–63 (Francis H. Smith, reporter 1857). Thus evolved the current language in Article IV, Section 17, that "No law shall embrace more than one subject, which shall be expressed in its title." Minn. Const. art. IV, § 17.

The first case to test this constitutional requirement was decided by this court in 1858, only a year after its adoption. In

*Board of Supervisors of Ramsey County v. Heenan*, 2 Minn. 330, 339 (Gil.281, 291) (1858), we upheld the constitutionality of a law reorganizing county and township governments but also requiring the register of deeds to deliver tax documents to the county board of supervisors. We concluded that the single subject requirement was not offended because there was "no attempt at fraud, or the interpolation of matter foreign to the subject expressed in the title." *Id.* Thirty-three years later we further developed our analysis in *Johnson v. Harrison*, 47 Minn. 575, 578, 50 N.W. 923, 924 (1891), when we held that "[a]n act to establish a Probate Code" providing for procedures in probate courts and for property rights in deceased's estates did not violate either the subject or the title provision of Section 17. In doing so we clarified the purpose of the Single Subject and Title Clause–to prevent "log-rolling legislation" or "omnibus bills." [22]

We explained however, that despite these constitutional restrictions, the single subject provision should be interpreted liberally and the restriction would be met if the bill were germane to one general subject:

> [W]hile this provision is mandatory, yet it is to be given a liberal, and not a strict, construction. It is not intended, nor should it be so construed as, to embarrass legislation by making laws unnecessarily restrictive in their scope and operation, or by multiplying their number, or by preventing the legislature from embracing in one act all matters properly connected with one general subject. The term 'subject,' as used in

---

**21.** Bradley B. Meeker was appointed judge in the new territory of Minnesota in 1849 and presided at the first term of court in Minneapolis. After leaving the bench he was a member of the constitutional convention in 1857. Meeker county is named for him. *See XIV Collections of the Minnesota Historical Society, Minnesota Biographies 1655–1912*, 501 (compiled by Warren Upham and Rose Barteau Dunlap, 1912).

**22.** We defined logrolling as the "combination of different measures, dissimilar in character, * * * united together * * * compelling the requisite support to secure their passage." *State v. Cassidy*, 22 Minn. 312, 322 (1875) (subject provision's purpose is to "secure to every distinct measure of legislation a separate consideration and decision, dependent solely upon its individual merits, by prohibiting the fraudulent insertion therein of matters wholly foreign").

the constitution, is to be given a broad and extended meaning * * *. All that is necessary is that the act should embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject. *Johnson,* 47 Minn. at 577, 50 N.W. at 924. As to the title provision, we explained that the clause is intended to prevent fraud or surprise upon the legislature and the public by prohibiting the inclusion of "provisions in a bill whose title gives no intimation of the nature of the proposed legislation," *id.,* 50 N.W. at 924, but we accord it the same liberal construction as the single subject provision. *See State ex rel. Olsen v. Board of Control of State Insts.,* 85 Minn. 165, 172, 88 N.W. 533, 536 (1902). In *Olsen* we held "[e]very reasonable presumption should be in favor of the title." *Id.* at 175, 88 N.W. at 537. Again in *State ex rel. Pearson v. Probate Court,* 205 Minn. 545, 552, 287 N.W. 297, 301 (1939), we noted that the generality of the title of an act is not grounds for invalidation as long as the title gives notice of the general subject because "the title was never intended to be an index of the law." We held that the title "An Act relating to persons having a psychopathic personality" and providing for the commitment of sexual offenders did not violate the title clause because it gave notice that the act concerned "sexually irresponsible persons." *See id.* at 552–53, 287 N.W. at 301.

While the policy objective of the constitutional restriction and framework for analysis have long been settled, early challenges to statutory enactments under Section 17 were more successful than in recent years. In *Winona & St. Peter R.R. Co. v. Waldron,* 11 Minn. 515, 535 (Gil.392, 410) (1866), this court held that an act to "facilitate the construction of a railroad from Winona westerly by way of St. Peter"

violated the single subject provision because it included "Consolidation; bridging the Mississippi; taxation." *See id.* at 529, 535 (Gil.394, 410). In *Anderson v. Sullivan,* 72 Minn. 126, 130–31, 75 N.W. 8, 8–9 (1898), we held that a law authorizing county officers' compensation to be increased was invalid because it was not expressed in the act's title, "An act authorizing and directing the county commissioners * * * to reduce the compensation and number of officers and other employees of such counties." We observed that to hold otherwise would permit logrolling to increase salaries of some officers at the expense of others. *See id.* at 131, 75 N.W. at 8–9.

Later, in *State v. Women's & Children's Hosp.,* 143 Minn. 137, 138–39, 173 N.W. 402, 402 (1919), we held that an act protecting abandoned or homeless children and "for the regulation of agencies receiving such children for care or placing out, and women during confinement" violated the Single Subject and Title Clause because the second part of the provision "relating to women during confinement" was "in no way germane to the former [and] has to do with places where mothers from almost every walk of life are received and cared for during confinement." Finally, in *State ex rel. Finnegan v. Burt,* 225 Minn. 86, 88, 29 N.W.2d 655, 656 (1947), we held the title provision was violated when a law relating to the discharge and demotion of employees appeared in an act entitled "An act to establish a classification and salary system in all counties of this state." We also held that the law covered a separate and distinct subject not suggested in the title of the act. *See id.* at 89, 29 N.W.2d at 656–57.

Since the late 1970's we have addressed the Single Subject and Title Clause in five cases and in no instance have we held that the law being challenged offended the constitutional restriction. In *Wass v. Anderson,* 312 Minn. 394, 399–400, 252 N.W.2d 131, 135–36 (1977), we rejected plaintiff's challenge that the single subject

provision was violated by "an act relating to transportation" that incorporated a constitutional amendment levying taxes on fuel for vehicles on public highways and bonds issued to finance highway construction. We held that there was no evidence of fraud and that the single subject provision was not violated because the proposed constitutional amendment was germane to the same general subject as the act's other provisions. *See id.* at 400, 252 N.W.2d at 135–36. We rejected plaintiff's claim of logrolling and that the term "transportation" was too broad to express a single subject because even though "transportation" is a general term, it was not misleading. *See id.* at 401–03, 252 N.W.2d at 136–37. We held "it is not essential that the best or even an accurate title be employed, if it be suggestive in any sense of the legislative purpose." *Id.* at 403, 252 N.W.2d at 137 (quoting *Olsen,* 85 Minn. at 175, 88 N.W. at 537).

Similarly, in *Lifteau v. Metropolitan Sports Facilities Comm'n,* 270 N.W.2d 749, 752–53 (Minn.1978), we rejected a claim that an act titled "An act relating to metropolitan government; providing for sports facilities; establishing a sports commission and prescribing its powers and duties * * *" violated the title provision of Section 17 when it empowered a commission established pursuant to the act to work with the Metropolitan Council to impose a two percent tax on the sale of alcohol near the stadium. We reiterated the purpose of the title provision and held that the act's title provided sufficient notice of the contents. *See id.* at 753. We also took judicial notice of the fact that no proposal received more coverage in the media and the legislative process than what was then known as the stadium bill. *See id.*

In the three most recent cases to come before this court however, while we have held that the challenged law did not violate Section 17, we have taken quite a different approach. In each instance we took the occasion to sound an alarm that we would not hesitate to strike down oversweeping legislation that violates the Single Subject and Title Clause, regardless of the consequences. In *State ex rel. Mattson v. Kiedrowski,* 391 N.W.2d 777, 778, 783 (Minn. 1986), an act permitting the legislature to transfer responsibilities of the State Treasurer to the Commissioner of Finance was challenged on the ground that the act violated the separation of powers doctrine as well as the single subject and title constitutional restrictions. We held the act unconstitutional as a violation of the separation of powers doctrine and therefore we did not reach the single subject issue, but in a concurring opinion by Justice Yetka, joined by Justice Simonett, the disparate provisions of the act were cited prompting Justice Yetka to declare that "now all bounds of reason and restraint seem to have been abandoned." *Id.* at 784 (Yetka, J., concurring specially). He referenced, for example, provisions relating to agricultural land, a council of Asian–Pacific Minnesotans and the establishment of a recycling program. *See id.* Justice Yetka questioned whether this court has been too lax in permitting such legislation and observed "[t]he worm that was merely vexatious in the 19th century has become a monster eating the constitution in the 20th." *Id.* He concluded with an alert to the legislature as to what was to come if an act violated the single subject and title provisions in the future:

[W]e should send a clear signal to the legislature that this type of act will not be condoned in the future. Garbage or Christmas tree bills appear to be a direct, cynical violation of our constitution * * *. It is clear to me that the more deference shown by the courts to the legislature and the more timid the courts are in acting against constitutional infringements, the bolder become those who would violate them.

* * * [W]e should publicly warn the legislature that it if does hereafter enact legislation similar to Chapter 13, which clearly violates Minn. Const. art IV,

§ 17, we will not hesitate to strike it down regardless of the consequences to the legislature, the public, or the courts generally.

*Id.* at 785.

A similar note of alarm was sounded three years later in *Blanch v. Suburban Hennepin Regional Park District,* 449 N.W.2d 150, 154 (Minn.1989), where a law was challenged under Section 17 that authorized a metropolitan park district to acquire land and to develop a park in an act titled "relating to the organization and operation of state government." We commented that "[t]he common thread which runs through the various sections of chapter 686 is indeed a mere filament," but we upheld the provision because the park bill was designed to allow the legislature to appropriate funds from the preceding session–thus it fell under the broad subject of appropriations for the operation of state government. *See id.* at 155. Justice Yetka again concurred, joined once again by Justice Simonett, observing that while the court correctly resolved the challenge because the legislature did not have the opportunity to heed the court's earlier warning in *Mattson,* "[t]he legislature hereafter has full notice of the consequences of overstepping constitutional limitations in its drafting of omnibus bills." *Id.* (Yetka, J., concurring specially). Chief Justice Popovich also picked up the cudgel when he observed, in a concurring opinion, that "the court is increasingly concerned about the possibilities of future violations of art. IV, § 17. * * * The views of the justices expressed today should be considered as instructive, alerting a co-equal branch of government, the legislature, to our concerns." *Id.* at 156–57 (Popovich, C.J., concurring specially).

Then in *Metropolitan Sports Facilities Comm'n v. County of Hennepin,* 478 N.W.2d 487, 490 (Minn.1991), we held that a law exempting certain space in the Metrodome from property taxation did not violate the single subject provision of Section 17 because the amendment was part of an omnibus fiscal bill and the title of the bill included taxation. We concluded that the property tax provision was germane and not unexpected. *See id.* We also acknowledged that while the bill could have been more consistent with the single subject requirement, it was enacted prior to the *Blanch* warning about the constitutional frailty of "garbage bills." *See Metropolitan Sports Facilities Comm'n,* 478 N.W.2d at 490.

■ With the benefit of the history of Section 17 in this court, we turn to the claims of the parties here. Appellants assert that the prevailing wage amendment is germane to the subject of tax relief and the "operation of state and local government" since the amendment was intended to overturn *NewMech,* a decision impacting tax relief. None of our prior rulings would indulge such a strained reasoning however, nor do we believe the clear wording of Section 17 permits the inclusion of such disparate provisions in one bill. While the amendment may have a tax impact by affecting construction costs, clearly that is not its purpose and nowhere is consideration of tax relief and reform mentioned in its very short text. The connection between the amendment and any subject of tax in the Omnibus Tax Act falls far short of even the mere filament test. The other sections in chapter 231 concerned subjects such as property tax reform, income taxes and property tax refunds, sales and special taxes, tax increment financing and mineral taxes–all subjects related to tax reform. In any event, clearly more than an impact on state finances is required to establish even a minimum thread of germaneness, as virtually any bill that relates to government financing and government operations affects, in some way, expenditure of state funds.

■ Respondents contend that the prevailing wage amendment is even less germane to the subject of financing and operation of local government because under the amendment prevailing wages are re-

quired to be paid regardless of whether the school project is publicly funded. Appellants counter that the legislature did not intend the amendment to apply beyond publicly funded projects.[23] We do not resolve that argument of statutory ambiguity, but note that the language of the amendment contains no apparent limitation on the school projects to which it applies other than the $100,000 requirement. We have held that taxes on motor vehicle fuel and bonds issued to finance highway construction are germane to the subject of transportation, property tax exemptions in the Metrodome are germane to the subject of taxation, and a metropolitan park district acquisition of land is germane to an appropriations bill. But even under a liberal interpretation–to avoid "embarrassment" of legislation–to construe an amendment requiring prevailing wages that lacks any express limitation to public funding as related to the subject of financing and operation of state and local government would push the mere filament to a mere figment. We decline to do so.[24]

■ Appellants next argue that there was no evidence of impermissible logrolling and therefore the mischief the constitutional restriction was intended to address is not present. Appellants' contention is misdirected. The Single Subject and Title Clause, as Minnesota's

first "sunshine law," requires that the legislature not fold into larger, more popular bills, wholly unrelated and potentially unpopular provisions that may not pass as a stand-alone bill. The purpose of preventing logrolling is to preclude unrelated subjects from appearing in a popular bill, not to eliminate unpopular provisions in a bill that genuinely encompasses one general subject. We fully recognize that it is the legislature's prerogative to establish our state's public policy in the area of prevailing wages and that the legislative process is not bound by rigid textbook rules. Nonetheless, lawmaking must occur within the framework of the constitution. So while we do not conclude that there was suspicious conduct on the part of the legislature nor impugn its motive in including the prevailing wage amendment in a bill that was predominately tax reform and relief, we are concerned about the lack of a single subject and the characteristics of logrolling. First, prevailing wages have been historically discussed in the labor committees, not tax committees.[25] Amendments to Minn. Stat. § 123B.71, subd. 2, where the prevailing wage amendment now appears, have historically come about through education bills.[26] That most discussions on

23. Appellants argue that the inclusion of the amendment in Minn.Stat. § 123B.71, subd. 2, entitled "review and comment for school district construction" restricts its application to public schools. However, revisor's headnotes are not part of the statute and thus do not determine its scope or meaning. See Minn. Stat. § 645.49 (1998) ("The headnotes printed in boldface type before sections and subdivisions in editions of Minnesota Statutes are mere catchwords to indicate the contents of the section or subdivision and are not part of the statute.").

24. The dissent argues that article 16, section 4, has a greater connection to the subject of chapter 231 than other sections in articles 15 and 16. However, of the eight sections listed by the dissent, seven pertain to state actors, for example the Commissioner of Commerce in article 15 and the Commissioner of Revenue in article 16, section 10, or they refer to

state property and government operations. See, e.g., art. 16, § 2 (addressing power and authority of sanitary districts); art. 16, § 3 (addressing the appeal of certain eminent domain awards). The remaining section, article 16, section 12, prohibits rebates in connection with the sale of cigarettes, a prohibition with clear tax reform implications. Unlike these sections, article 16, section 4, is related neither to the subject of tax reform nor to state government financing and operation.

25. See supra note 3.

26. See, e.g., Act of Apr. 3, 1996, ch. 412, 1996 Minn. Laws 739 (entitled "An act relating to education * * * amending Minnesota Statutes 1994 * * * [123B.71, subd. 2]"); Act of June 30, 1997, ch. 4, 1997 Minn. Laws Spec. Sess. 3207 (entitled "An act relating to education * * * amending Minnesota Statutes 1996 * * * [123B.71, subd. 2]").

prevailing wages took place in the tax committee suggests, if not logrolling, an unexplained deviation from the history of labor committee discussions on the prevailing wage act.

Second, the issue of prevailing wages had no companion bill in the senate, received little consideration in the house committee hearings and was inserted into a much broader and popular bill with an entirely different legislative theme. Third, while we acknowledge that the legislative process is complicated and the rationale for pursuing one particular process or another is not always clear, obviously a more direct route to adopting the amendment would have been to redefine "project" in Minn.Stat. § 177.42, which includes the original definition of "project" for prevailing wage purposes. These factors raise concerns about the legislative process, and with the lack of germaneness to the general subject of taxes and tax reform, we conclude that the prevailing wage amendment violates the single subject provision of our constitution.

■ Finally, appellants argue that chapter 231 does not violate the title provision of Section 17 because its title gave sufficient notice of the amendment to the prevailing wage law. The single subject and title provisions of Section 17 are often discussed together, but the title provision serves a different purpose and requires a somewhat different analysis. The purpose of the title provision is to prevent fraud or surprise on the legislature and the public–in essence to provide notice of the nature of the bill's contents. *See Johnson,* 47 Minn. at 577, 50 N.W. at 924. Here, the title references "financing and operation of state and local government" and property tax relief and rate reform, tax rebates, truth in taxation, local tax levies and tax credits–all themes of tax reform and relief. Nowhere is there a reference to labor, wages, school construction or a myriad of other words that would suggest that it contains a provision having a potentially significant impact on the cost of school construction. The first clause in the title of the bill seems to be virtually generic, as other appropriations bills passed in the same legislative session have the same general title–"relating to the organization and operation of state government"[27]– hardly giving notice of "the interests likely to be affected" we required in *Wass,* 312 Minn. at 398, 252 N.W.2d at 134, or that is "suggestive in any sense of the legislative purpose." *Olsen,* 85 Minn. at 175, 88 N.W. at 537. Even with "every reasonable presumption * * * in favor of the title," *id.,* 88 N.W. at 537, the failure of chapter 231 to give even a hint that the prevailing wage amendment was part of the bill leads us to the conclusion that the title did not provide sufficient notice of the amendment to legislators and school districts to meet the constitutional requirement of Section 17.

## II. Severability

■ We consider next whether the entirety of chapter 231 must be held unconstitutional because it contains more than a single subject and its title does not give reasonable notice of its contents, or whether there can be a severance of the offending amendment permitting to stand the other statutory provisions of chapter 231. For several reasons we conclude that the constitutional construal of Article IV, Sec-

27. The title of chapter 200 is "An act relating to the organization and operation of state government; appropriating money for economic development and certain agencies of state government * * *." Act of May 22, 1997, ch. 200, 1997 Minn. Laws 1415. Chapter 216 is entitled "An act relating to the organization and operation of state government; appropriating money for environmental, natural resource, and agricultural purposes * * *." Act of May 30, 1997, ch. 216, 1997 Minn. Laws 1995. Other laws are entitled with more specificity, for example chapter 162 is entitled "An act relating to family and early childhood education * * *." Act of May 16, 1997, ch. 162, 1997 Minn. Laws 1045.

tion 17, does not require the entire law to be declared unconstitutional.

First, the words of Section 17 do not require such a draconian outcome. By the plain words of the article, it does not prohibit a bill from becoming law if it does embrace more than one subject—it only states that "No law shall embrace more than one subject, which shall be expressed in its title."[28] Minn. Const. art. IV, § 17. It is at least implicit that on judicial review, the court has the option of bringing the law into constitutional compliance by severing a provision that is not germane to the theme of the law. *Cf. Sullivan,* 72 Minn. at 133, 75 N.W. at 9–10 (stating that "while a part of the statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also"). Moreover, litigation calls into challenge but one aspect of the law. Our goal of constitutional compliance relates to the particular provision of the law being challenged only and we are not prejudging that any other aspect of the law is germane.

Second, it is no more reasonable to conclude that the constitution's language requires the entire law to be declared unconstitutional than it is to proceed on a far less disruptive course of severing from the law the offending provision—here the prevailing wage amendment—and preserving its other parts. Indeed it could well be argued that to hold the entire law unconstitutional, when the great weight of the other provisions are so singularly related to the common theme of tax relief and reform, would be overstepping our judicial bounds in disregard of the constitutional principle of separation of powers. *See Koehnen v. Dufuor,* 590 N.W.2d 107, 113 (Minn.1999).

Third, the severance remedy is certainly not a novel resolution of how far the effect of unconstitutionality reaches when the challenged provision is unrelated to the

theme of the law. Over a hundred years ago, in *Sullivan,* we invalidated one provision of a law but upheld the remainder:

> The familiar rule on the subject is that, while a part of the statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other.

72 Minn. at 133, 75 N.W. at 9–10. On several occasions between 1901 and 1932 this court held provisions of a statute unconstitutional under Section 17 but, without even a comment on the breadth of the ruling, declined to invalidate the entire statute. *See, e.g., Egekvist Bakeries, Inc. v. Benson,* 186 Minn. 520, 523, 243 N.W. 853, 854 (1932) (holding that sanitary wrapping of bread was not germane to an act regulating the weight of bread and severing only the unconstitutional portion of the statute); *In re Day,* 93 Minn. 178, 182, 102 N.W. 209, 211 (1904) (invalidating only the last provision of a law); *Winters v. City of Duluth,* 82 Minn. 127, 132–33, 84 N.W. 788, 790 (1901) (holding that one provision of an act was invalid because the title of the act was not broad enough to include it, but "we do hold that the act * * * is constitutional"). In *Finnegan,* we upheld the remainder of a statute after invalidating one of its provisions on the ground that the unconstitutional provision was unrelated to the subject matter of the remainder of the law and thus could be severed. *See* 225 Minn. at 89–90, 29 N.W.2d at 657.

Precedent leading to the more draconian result of invalidating the entire law is not particularly useful. In *Women's & Children's Hospital,* we ruled that the law violated Section 17 and invalidated the en-

---

**28.** The constitutional history casts no light on the relation of wording, but the practical result of a more draconian wording might have cast a shadow over the nature of much of the work of the legislature which would be in doubt until reviewed by the courts.

tire law, but the circumstances were clearly distinguishable from those here. *See* 143 Minn. at 139, 173 N.W. at 402. There the law contained two distinct subjects and if either provision was to survive, the court would be required to engage in a balancing of importance between the two–clearly a legislative process.[29] Here, where chapter 231 includes a provision that clearly is not germane to the subject of otherwise massive legislation, we need not engage in such a pursuit.[30]

In *State ex rel. Foster v. Naftalin,* 246 Minn. 181, 200, 74 N.W.2d 249, 261 (1956), we observed that an entire law is unconstitutional generally in two instances: where its terms conflict with a constitutional provision, or where the method of enactment does not comply with constitutional requirements. There, we held unconstitutional a law that included an amendment never passed by the legislature. *See id.* at 185, 192, 74 N.W.2d at 253, 257. We invalidated the entire law noting that although the balance of a constitutionally enacted law can be upheld even if one provision violates the constitution, "[i]t does not follow that, where a bill never has become a law for failure to follow constitutional mandates in the process of enactment, a part of it can be sustained." *Id.* at 199, 74

N.W.2d at 261. Importantly, and as the special concurrence and dissent seems to overlook, we specifically distinguished the circumstances in *Naftalin* from "cases where the constitutional prerequisites to enactment of a law have been followed but where parts of the act are unconstitutional for some other reason *such as failure to comply with Minn. Const. art. 4, [§ 17]."* 246 Minn. at 199, 74 N.W.2d at 261 (emphasis added); *see . also Freeman v. Goff,* 206 Minn. 49, 53, 287 N.W. 238, 241 (1939).

The court of appeals relies heavily on Minn.Stat. § 645.20,[31] enacted in 1941, permitting courts to sever an unconstitutional provision from a comprehensive law. We have reservation that an act of the legislature could substantively determine the breadth of the sweep of Section 17 under traditional principles of separation of powers. *See, e.g., Petition for Integration of Bar of Minnesota,* 216 Minn. 195, 199, 12 N.W.2d 515, 518 (1943) ("The supreme court is thereby made the final authority and last resort in [interpreting] * * * the constitution."). Since the legislature cannot authorize the court to do what the constitution prohibits, we reiterate that our authority to sever the offending provision comes not from the legisla-

**29.** The special concurrence and dissent asserts that our analysis ignores the distinctions between a bill, a law and a statute. However for over 100 years we have consistently viewed severability as the appropriate remedy when a provision of a law is unrelated to the law's general subject, and invalidated the entire law only when it contained two distinct subjects.

**30.** We take this opportunity to observe that both dissents are of the view that severing the offending provision will do little to discourage the legislature from obscuring from public view laws that may be unpopular unless we take the more draconian step of declaring the entire law unconstitutional. We do not perceive that as our responsibility. The thrust of the court's ruling is to honor the legislative process by upholding, where possible, the constitutionality of the law in principle and constitutionally rejecting only the offending provision. Were we to declare the entire law

unconstitutional, we would engage in far greater encroachment on the legislative process than our ruling here.

**31.** This section provides:

Unless there is a provision in the law that the provisions shall not be severable, the provisions of all laws shall be severable. If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.
Minn.Stat. § 645.20.

ture, but from the constitution itself and precedent interpreting Section 17.

 Central to our determination to sever a provision from a law is whether "all the provisions are connected in subject-matter." *Sullivan,* 72 Minn. at 133, 75 N.W. at 10. As we have determined that the prevailing wage amendment is not connected in subject matter to the common theme of the law, severance is a resolution clearly consistent with our holding that the prevailing wage provision is unrelated to tax reform and relief. In light of our prior case law and our review of *Naftalin* and *Blanch* we conclude that severance is appropriate.

 Appellants correctly point out that in *Blanch* we questioned whether we would invalidate entire laws in future violations of Section 17.[32] *See Blanch,* 449 N.W.2d at 155. We decline that path now in favor of a more pragmatic result that is

consistent with our constitution and the cases interpreting provisions in violation of the Single Subject and Title Clause. This decision both informs the legislature that we do not hesitate to declare unconstitutional a statutory provision violating the Single Subject and Title Clause, but avoids the draconian outcome of holding, on these facts, that an unrelated provision in a law should bring the whole law down.[33] Where the common theme of the law is clearly defined by its other provisions, a provision that does not have any relation to that common theme is not germane, is void, and may be severed.[34]

Affirmed.

PAGE, J. (dissent).

I respectfully dissent. I do so because I disagree with the court's conclusion that the 1997 Omnibus Tax Bill, Act of June 2, 1997, ch. 231, 1997 Minn. Laws 2394, vio-

---

**32.** The special concurrence and dissent refers to *Blanch* as signaling the path the court will take if it holds a bill to violate Section 17. That was not our ruling in *Blanch*. In *Blanch,* we upheld the constitutionality of the law under Section 17 and in dictum, cautioned, "we are constrained to observe that since it is the presence of more than one subject which renders a bill constitutionally infirm, it appears to us at this time unlikely that any portion of such a bill could survive constitutional scrutiny." *Blanch,* 449 N.W.2d. at 155. However, we also suggested the reverse: "[w]ere we not of the opinion that the park bill * * * is germane to the broad subject of appropriations for the operation of state government, we would, despite our long-standing tradition of deference to the legislature, be compelled to declare [the park bill] violative of art. 4, § 17, and, hence, unconstitutional and void." *Blanch,* 449 N.W.2d at 155. *Blanch* thus expresses our concern with the practice of severance in cases involving Section 17, but also indicates that had we held the park law unconstitutional we would have invalidated only that portion of the law. Concurring specially, Chief Justice Popovich prophetically voiced his concern:

It is evident by the opinions of the justices in this matter that the court is increasingly concerned about the possibilities of future violations of article 4, section 17. I have written separately because of the

chaos that could result if an omnibus appropriation bill was declared invalid. * * * [A] likely possibility exists that if an improper provision is included in a major appropriation law the entire law could fall. This approach clearly would be a greater deterrent to risking a constitutional violation than severing only a challenged provision – because the latter approach would then permit the legislature "to take a chance" since the entire law would not fall.

*Blanch,* 449 N.W.2d at 156 (Popovich, C.J., concurring specially).

**33.** The special concurrence and dissent's reference to our severance of the provision as a "judicial line-item-veto" represents a serious misunderstanding of the difference between a simple session law containing two provisions and a massive session law such as this one where the challenged provision is clearly a misfit with respect to the subject of the balance of the law. It is difficult to rationalize the dissent's preference for declaring the entire law unconstitutional–a total veto, in the dissent's parlance–with its anxious concern for declaring only the offending provision unconstitutional.

**34.** Our review here is limited to cases and controversies before us. *See Lipka v. Minnesota Sch. Employees Ass'n, Local 1980,* 550 N.W.2d 618, 622 (Minn.1996).

lates Article IV, Section 17, of the Minnesota Constitution which provides that "No law shall embrace more than one subject, which shall be expressed in its title."[1] Laws passed by our legislature are presumed constitutional and "our powers to declare a [law] unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989). Further, we have said that a law will withstand a single subject challenge even when "the common thread which runs through the various sections * * * is * * * a mere filament." *Blanch v. Suburban Hennepin Reg'l Park Dist.*, 449 N.W.2d 150, 155 (Minn.1989). With respect to a subject being expressed in the title of the enactment, we have said "it is sufficient that the title is fairly suggestive of the enactments which follow." *State v. Pioneer Press Co.*, 100 Minn. 173, 175, 110 N.W. 867, 868 (1907).

Chapter 231 is "[a]n act relating to the financing and operation of state and local government * * *."[2] In their complaint, respondents allege that the prevailing wage requirements enacted in article 16, section 4 of chapter 231 will result in a cost increase more than $2 million above and beyond the initial cost budgeted for completion of ISD 882's high school construction project. Given the fiscal and tax implications of article 16, section 4 of chapter 231, as alleged by respondents in support of their contention that chapter 231 is un-

constitutional, it is difficult to see how that section is not connected to the other enactments contained in chapter 231 by, at a minimum, a "mere filament." *See* Act of June 2, 1997, ch. 231, article 16, section 4, 1997 Minn. Laws 2394, 2629. The court also suggests that article 16, section 4 does not involve state and local government financing or operation. I believe that suggestion is incorrect. The language of article 16, section 4, now codified at Minn.Stat. § 123B.71, subd. 2 (1998), provides that school construction projects exceeding $100,000 in cost are projects under Minn. Stat. § 177.42, subd. 2 (1998) of the state's prevailing wage act. As such, the applicability of article 16, section 4 is limited to "*projects* financed in whole or in part by state funds * * *." Minn.Stat. § 177.41 (1998) (emphasis added). "Project" under the prevailing wage act means "[the] erection, construction, remodeling, or repairing of a *public* building or other *public* work financed in whole or part by state funds."[3] *See* Minn.Stat. § 177.42, subd. 2. Thus, there is also a direct connection to state and local government financing and operation. Based on these connections and the law's title, I cannot conclude that article 16, section 4 of chapter 231 violates Article IV, Section 17, of the Minnesota Constitution.

Interestingly, article 16, section 4 of chapter 231 has a far greater connection to the title of chapter 231 as well as to the

---

**1.** Article IV, section 17, is intended "to prevent the title [of the law] from being made a cloak or artifice to distract attention from the substance of the act itself." *Wass v. Anderson*, 312 Minn. 394, 398, 252 N.W.2d 131, 135 (Minn.1977) (quoting *State ex rel. Olsen v. Board of Control*, 85 Minn. 165, 175, 88 N.W. 533, 537 (1902)). "The single subject rule was not intended to inhibit comprehensive legislation." *Id.* at 400, 252 N.W.2d 131. Its purpose is to prevent "log-rolling," which is the attachment of undesirable riders upon bills that are more likely to be passed. Proper observance of the single subject rule of the constitution assures that every distinct piece of legislation is considered on its own

merits. *See State v. Cassidy,* 22 Minn. 312, 322 (1875).

**2.** Act of June 2, 1997, ch. 231, 1997 Minn. Laws 2394.

**3.** The court states that "to construe an amendment requiring prevailing wages that lacks any express limitation to public funding as related to the subject of financing and operation of state and local government would push the mere filament to a mere figment." The court then "declines" to do so in this case. In making that statement and in declining to construe the amendment here, the court, by way of legerdemain, ignores the express limitations contained in the prevailing wage act.

majority of the provisions contained in chapter 231 than do any of the provisions of article 15, which deal exclusively with the regulation of certain insurance companies. Article 16, section 4 of chapter 231 also has as much if not more of a connection to the majority of the provisions of chapter 231 than do article 16, section 1, which deals with reporting of local government lobbying expenditures; article 16, section 2, which deals with the power and authority of sanitary districts; article 16, section 3, which deals with the appeal of certain eminent domain awards; article 16, section 5, which deals with utility easements and the conveyance of property by the Commissioner of Transportation; article 16, section 11, which deals with the distribution of income by cooperatives; article 16, section 12, which prohibits rebates and concessions by wholesalers in connection with the sale of cigarettes; article 16, section 19, which deals with a county's, home rule charter city's, statutory city's, town's, school district's or other political subdivision's authority to create a corporation and the validity of certain lease purchase agreements; and article 16, section 27, which requires that computer hardware and software purchased with money appropriated in chapter 231 be Year 2000 compliant.

While I believe the court is in error when it concludes that chapter 231 violates Article IV, Section 17, of the Minnesota Constitution, I do not believe that error is the court's most serious or most troubling. By severing article 16, section 4 from the remainder of chapter 231, the court has taken on the role of a super legislature,

deciding which provisions of chapter 231 will be given effect by picking and choosing between the law's various provisions, even though all of its provisions are unconstitutional. Under article IV, section 17, this court is not vested with the power to determine that certain provisions of an enactment will become law and that others will not.[4] The court's only power is to declare the entire law either constitutional or unconstitutional. Interestingly, in severing what it believes to be the offending provision of chapter 231, the court does not rely on language from the constitution.[5] It does not because under article IV, section 17, it cannot. Article IV, section 17, of the constitution says "*No law* shall embrace more than one subject which shall be expressed in its title." (Emphasis added.) The language of article IV, section 17 could not be clearer or more explicit. It says "no law," it does not say "no provision of a law."

In defending the severance of what it believes to be the offending provision of chapter 231, the court relies on verbal sleight-of-hand. While talking about the constitutionality of chapter 231, under article IV, section 17 of our constitution, the court applies the principles we use to determine whether a statute or a provision of a statute is constitutional. The court acts as though our responsibility is not to determine the constitutionality of the law being challenged. Indeed, the court states that "Our goal of constitutional compliance relates to the particular provision of the law being challenged only * * *." That statement is incorrect. The court evident-

---

**4.** The practice of severing select provisions ignores the fact that even if a provision of a law is not germane to its title or is inconsistent with its subject, it does not mean that the provision, as part of the original bill, played no role in the bill being enacted into law. Therefore, there is no guarantee that absent the offending provision the bill *would have* become a law.

**5.** The court does say "By the plain words of the article, it does not prohibit a bill from becoming law if it does embrace more than

one subject * * *." And the court is correct in that statement. The article does not prevent such a bill from becoming law. But our concern is not with "bills" which have not been enacted into law, our constitutional concern is with laws that have been enacted. The court acknowledges as much at the end of the sentence quoted above when it states "it only states that 'No law shall embrace more than one subject, which shall be expressed in its title.' " The court then goes on to ignore the constitution's language.

ly does not understand the distinction between a law that, while validly enacted, contains a provision that is unconstitutional and a law that is unconstitutional because it was never validly enacted.

Our responsibility is to determine whether the law which was enacted as chapter 231, when enacted, was a law embracing "more than one subject" at least one of which was not "expressed in its title." The court knows that article 16, section 4, standing alone, does not offend the Minnesota Constitution. The only possible constitutional offense is that by article 16, section 4's inclusion in the law that was enacted as chapter 231, the law was not validly enacted because it embraces "more than one subject" at least one of which was not "expressed in its title." While the mere presence of article 16, section 4 in chapter 231 may render all of chapter 231 unconstitutional because it was never validly enacted, the mere presence of the provision does not render the provision itself unconstitutional.

The underlying purpose of article IV, section 17, as the court notes, is to prevent logrolling legislation. In addition, article IV, section 17 is intended to ensure that citizens are fairly apprised of the subjects of laws being considered by the legislature. Those purposes are not and cannot be met by severing any one offending provision of a law. First, as indicated, it puts the court into the role of super legislature in violation of Article III, Section 1, of the Minnesota Constitution.

More importantly, declaring only the offending provision unconstitutional does nothing to discourage the legislature from engaging in the conduct that article IV, section 17 seeks to prevent. Indeed, it may even encourage such conduct. If the legislature enacts a law in violation of article IV, section 17, four things can happen, only one of which discourages laws in violation of article IV, section 17, from being passed. The law may go unchallenged or the law may be challenged but, for whatever reason the reviewing court may decline

to strike it down. In either of these cases, the legislature will not be discouraged from violating article IV, section 17.

The law may also be challenged, held unconstitutional and the offending provision severed. Finding the law unconstitutional and severing the offending provision, however, does nothing to discourage the legislature from passing laws in violation of article IV, section 17. On the surface it would seem that severing the offending provision would discourage the legislature from enacting such laws; in fact it does not, because in reality having the offending provision held unconstitutional and then severed from those provisions which go unchallenged results in the legislature (or those behind the offending provisions) being no worse off than if the severed provision had not been enacted at all. Given the possibility that the law may not be challenged at all or if challenged, may be held constitutional, there is no downside to enacting such legislation if the worst position the legislature will be in if the law violates the constitution is the same position it would have been in had the offending provision not been enacted. Further, there may be some political benefit to be gained by including such provisions in a law even if the law is subsequently held unconstitutional and only the offending provision is severed from the remaining provisions of the law.

Finally, the challenged law may be held unconstitutional and the entire law struck down. This is the only outcome that provides an incentive for the legislature to refrain from enacting laws which offend article IV, section 17. Moreover, the clear language of article IV, section 17 requires that result.

While I disagree with the court's conclusion that article 16, section 4 of chapter 231 violates Article IV, Section 17, of the Minnesota Constitution, to the extent that the court is correct and I am wrong on that point, the clear language of article IV, section 17 and the purposes behind that

constitutional provision mandate that the law in question, chapter 231, be struck down in its entirety as unconstitutional because "[n]o law shall contain more than one subject which, shall be expressed in its title." [6] Minn. Const. art. IV, § 17.

**PAUL H. ANDERSON, J.** (concurring in part and dissenting in part).

*People who love sausage and respect the law should never watch either of them being made.*—Otto von Bismarck [1]

I agree with the majority that chapter 231 violates the Single Subject and Title Clause of Article IV, Section 17 of the Minnesota Constitution, but I do not agree that we can simply excise one offending provision and allow the remainder of the law to continue in effect. Therefore, I respectfully dissent on Part II of the majority opinion.

For the reasons expressed in the majority opinion, the inclusion of a prevailing wage law concerning school construction in what was essentially a tax bill violated Article IV, Section 17 of the Minnesota Constitution. While the "mere filament" test has served this court for many years, its interpretation has now become so deferential as to render Section 17 ineffectual. Part I of the majority opinion correctly reflects the trend of our court's decisions on Section 17 over the past 15 years and returns our court to its proper role in interpreting this section of our constitution, namely to give each part of the constitution the plain meaning and effect of its language.

While agreeing that chapter 231 is unconstitutional under Section 17, I cannot agree with the majority's conclusion that we can simply strike the offending provision of this law and permit the remainder to continue in effect. The majority's analysis ignores the constitution's plain language, confuses the various phases through which a legislative enactment must pass, and ultimately encourages the very mischief Section 17 was designed to prevent.

Section 17 is directly worded, stating that: "No law shall embrace more than one subject, which shall be expressed in its title." Minn. Const. art. IV, § 17. The majority claims that this language does not require us to invalidate chapter 231 in its entirety. But such a reading ignores that Section 17 is contained in Article IV, which defines the legislature and the procedures by which legislation is enacted. As such, Section 17's language has meaning only in the context of enacted session laws; otherwise, the application of Section 17's title provision would be meaningless. The title of a law exists only with respect to the session law and is not part of the statutes as codified by the revisor of statutes. *See generally* Minn.Stat. § 3C.08 (1998). Furthermore, Section 17 in no way addresses the validity of the provisions of a law. The majority's interpretation essentially would rewrite Section 17 to read: "No provision of a law shall be valid unless it is embraced

---

**6.** In footnote 33 of the court's opinion, the court makes reference to the "dissent's preference for declaring the entire law unconstitutional * * *." That statement is based on a false premise. I have no preference for declaring the entire law unconstitutional. First, as I have indicated, my reading of article 16, section 4 of chapter 231, in light of our case law and the purposes underlying article IV, section 17 of our constitution, leads me to the conclusion that chapter 231 does not violate the constitution. Moreover, my conclusion that the court lacks the constitutional authority to sever an offending provision of a law that violates article IV, section 17 is not guid-

ed by any personal preference but only by the constitution's clear mandate. To the extent that I am guided by any preference, my preference would be that this court give meaning to article IV, section 17's language and comply with its mandate.

**1.** While the exact origin and form of this quotation are not readily ascertainable, the comparison of law and sausage making is widely attributed to German Chancellor Otto von Bismarck–Schoenhausen (1815–1898). *See* Lewis D. Eigen & Jonathan P. Siegel, *The Macmillan Dictionary of Political Quotations* 325 (1993).

by the subject of the law, of which there shall be only one, and which shall be expressed in its title." But Section 17 does not give us any authority by which to hold a *provision* of a law unconstitutional. As stated above, Section 17's mandate is simple and clear, "No *law* shall embrace more than one subject, which shall be expressed in its title." Minn. Const. art. IV, § 17 (emphasis added).

The majority fails to appreciate the distinctions between bills, laws, and statutes. A bill is proposed legislation that has not completely made its way through the legislative process. Laws are bills that have been enacted by the legislature and then signed by the governor, enacted after three days of gubernatorial inaction, or passed by a legislative override of the governor's veto. *See* Minn. Const. art. IV, § 23. Statutes are enacted laws that are codified, organized, and assembled by the revisor of statutes. *See generally* Minn.Stat. § 3C.10 (1998) (defining the publication powers of the revisor of statutes).

Our court has authority articulated in Minn.Stat. § 645.20 (1998) to sever a provision of a law that has been found to be unconstitutional. In the context of a statute, this makes sense because any particular provision of a statute may have been passed years apart from the remainder of the statute. This section also reflects the legislature's intent that, when possible, only the unconstitutional provision of a validly enacted law be stricken and that the balance of the law be preserved. However, severing a provision of a law found to be in violation of Section 17 is profoundly different from severing an unconstitutional provision under section 645.20.

The severability of a provision of a law as articulated in section 645.20 is predicated on the basis that the law containing the challenged provision was properly enacted and that a court has subsequently determined that the provision's requirements or prohibitions violate the constitution. Such a determination is different from saying that the law containing the provision itself was not validly enacted. The latter infirmity is not only fatal to the challenged provision, but to every other provision of the same law. A violation of Section 17 strikes at the validity of the entire law, not merely the challenged provision.[2] We commented on the consequence of a violation of Section 17 in *Blanch v. Suburban Hennepin Regional Park District* when we said: "[W]e are constrained to observe that since it is the presence of more than one subject which renders a bill constitutionally infirm, it appears to us at this time unlikely that any portion of such a bill could survive constitutional scrutiny." 449 N.W.2d 150, 155 (Minn.1989). Our reasoning in *Blanch* was sound and there is no cause to depart from that reasoning today.

I agree with Justice Page when he notes in his dissent that severing the challenged provision defeats the purpose of Section 17. Not only would severance encourage "logrolling," it may well facilitate it. The majority correctly notes that the purpose of Section 17 is that of a "Sunshine law." Section 17 is designed to ensure that bills are passed with reasonable notice of their contents, both to legislators and to the public at large. It is also designed to ensure that unpopular and unrelated provisions are not hidden in voluminous bills or attached to popular bills to ensure their passage. Severance of a challenged provision of a law found to be in violation of Section 17 would defeat Section 17's purpose and establish the judiciary as a "super-legislature."

By allowing severance, the majority essentially permits the legislature to pass

---

2. The majority refers to our comment in *Foster v. Naftalin,* 246 Minn. 181, 74 N.W.2d 249 (1956), to support the proposition that a violation of Section 17 is not a flaw in a law's enactment. However, *Naftalin* dealt with a fatal variance between the bill passed by the legislature and that signed by the governor, not a violation of the Single Subject and Title Clause. *See* 246 Minn. at 199, 74 N.W.2d at 261.

whatever bills it pleases, knowing that if challenged, the courts will strike only the challenged provisions. As Justice Page points out, the legislature may be willing to act on the remote chance that a provision will be challenged and, if challenged, struck. Even more problematic would be the ability of the legislature to pass provisions popular with the general public, but injurious to certain parties, with the ability to assure those parties that the courts will likely excise the provisions if challenged.

As the introductory quotation suggests, the passage of a legislative enactment is a complex process whereby diverse interests are harmonized and consensus is built. It is a process that involves compromise and negotiation. Section 17 limits that process. We recognized that limit in *State v. Women's & Children's Hospital* where the challenged law contained only two provisions on distinct subjects: homeless children and hospitalization for pregnant women. *See* 143 Minn. 137, 138–39, 173 N.W. 402, 402 (1919). The majority claims that chapter 231 is clearly distinguishable from the law in *Women's & Children's Hospital.* I disagree. The dispositive issue in *Women's & Children's Hospital* was not the balancing of the two provisions, but rather the inclusion of more than a single subject in the law. *See id.* While chapter 231 is more complex and comprehensive than the legislation in *Women's & Children's Hospital,* it still suffers the exact same constitutional infirmity: the inclusion of more than a single subject.

The majority argues that because chapter 231 is so complex, we may sever an unrelated part as we would an unconstitutional provision in a validly enacted law. Again, this argument ignores the basic fact that the aforementioned authority to sever is specifically articulated in Minn.Stat. § 645.20. Here, our authority comes directly from Section 17, which dictates the title clause and the single subject require-

ments. By excising the challenged provision, the majority has now created a piece of legislation that was not passed by either house of the legislature nor signed by the governor. The majority essentially establishes a "judicial line-item-veto" without any constitutional basis. I cannot countenance such a usurpation of the legislative function by the judiciary. Therefore, I am compelled to conclude that when a law is found to have violated Section 17, then it is the entire law that is invalidated.

I am not unmindful of the drastic effect that invalidating a major piece of legislation such as chapter 231 will have on those in this state who have reasonably relied on its validity. This is especially true when that legislation has been in effect for many years. Nor can I ignore the potential rush of litigation that this result may encourage. I also acknowledge the role our court may have played in encouraging this reliance by our overlong unwillingness to give Section 17 its stated force and effect. For the past 30 years, we have not used Section 17 to invalidate any piece of legislation. We may have been overly deferential to the legislature's continuing abuses in this area.

In recent years, members of this court have warned the legislature that omnibus legislation will receive greater scrutiny under Section 17. But the recurring nature of omnibus-tax and fiscal legislation in recent years should indicate to the court that our colleagues' warnings have gone unheeded. I find this understandable. While the writings of individual justices of this court are important parts of the judicial process, this court only speaks as a co-equal branch of government through its majority decisions. *See generally Anchor Cas. Co. v. Miller,* 258 Minn. 585, 585–86, 105 N.W.2d 689 (Minn.1960). This court has issued no warnings of a like nature through its majority opinions.[3]

3. The majority today argues that such a warning was given in *Blanch.* In *Blanch,* Justice Yetka claimed that "the majority opinion

adopts the position of my concurrence in *Mattson [v. Kiedrowski,* 391 N.W.2d 777, 783 (Minn.1986) (Yetka, J., concurring special-

I believe that the inclusion of the prevailing wage provision in Minnesota Laws 1996, chapter 231 violates the single subject and title requirements of Article IV, Section 17 of the Minnesota Constitution and that a violation of Section 17 renders the entire session law invalid. However, for all the reasons I have previously stated and under the precedent of our rulings in *Holmberg v. Holmberg,* 588 N.W.2d 720, 726–27 (Minn.1999), *Nieting v. Blondell,* 306 Minn. 122, 132, 235 N.W.2d 597, 603 (Minn.1975), and *Spanel v. Mounds View School District No. 621,* 264 Minn. 279, 292–94, 118 N.W.2d 795, 803–04 (Minn. 1962), I would have the effect of this decision be prospective, applying only to those laws passed after the date of this opinion. Such application may also give the legislature an opportunity, if it so desires, to consider such constitutional amendments necessary to exempt omnibus fiscal legislation from the requirements of Section 17.[4]

ly) ]." However, the *Blanch* majority did not explicitly do so and appears to apply the same deferential "mere filament" standard to uphold the challenged legislation. *Id.* at 155. *Blanch* is a tepid warning at best.

4. Many states that have single subject provisions in their constitutions also have created constitutional exceptions for omnibus fiscal legislation. *See generally* Millard R. Rudd, *"No Law Shall Embrace More Than One Subject,"* 42 Minn. L.Rev. 389, 414, n. 102 (1958).